Jasen, J.
In the first of these consolidated appeals (Town of North Hempstead v Village of North Hills), the Town of North Hempstead seeks a judgment declaring a zoning ordinance and amendment adopted by the Village of North Hills to be unconstitutional, and enjoining village officials from authorizing or permitting construction on any parcel of land benefited by the challenged ordinance and amendment. Special Term granted the village’s motion to dismiss the com *340 plaint on the ground that the town lacks standing to commence such an action. In the second appeal (Matter of Ruggiero v Grace), certain individual property owners seek a judgment pursuant to CPLR article 78 annulling the determination made by the board of trustees of the village in rezoning a particular parcel under this same ordinance, and declaring a portion of the ordinance to be unconstitutional. Special Term also dismissed this petition on the ground that the individual property owners lack standing, but at the same time indicated that even if they had standing, the petition would be dismissed on the merits. On consolidated appeals, the Appellate Division affirmed both judgments, but indicated that it did not approve of the conclusion that the property owners in Matter of Ruggiero had no standing. We would affirm that order affirming both judgments.
We agree with the conclusion reached in the courts below in Town of North Hempstead that the town lacks standing to challenge this ordinance and amendment. Subdivision 1 of section 7-706 of the Village Law provides in relevant part that "written notice of any proposed [zoning] change or amendment affecting property within five hundred feet of the boundaries of any * * * town * * * shall be given * * * to the clerk of such * * * town * * * at least ten days prior to the date of such public hearing. Such * * * town * * * shall have the right to appear and to be heard at such public hearing with respect to any such proposed change or amendment, but shall not have the right of review by a court as hereinafter provided.”[1] The town does not contend that the village failed to give it the required notice either in 1970 when the challenged ordinance was originally adopted or in 1974 when certain property was rezoned pursuant to the terms of that ordinance. Since we can assume, therefore, that the village fulfilled the requirements of section 7-706, we hold that the town is prohibited from seeking judicial review by the express terms of the statute.
The town would instead have us ignore the unequivocal language of section 7-706 and grant it standing by extending the rationale of such cases as United States v SCRAP (412 US 669), Sierra Club v Morton (405 US 727), and Matter of Douglaston Civic Assn. v Galvin (36 NY2d 1), which broadened *341 standing in at least environmental[2] and zoning matters. Significantly, however, those and similar cases did not involve a statutory denial of standing, and that distinction is fatal to the town’s claim.[3]
Nor does Matter of Town of Bedford v Village of Mount Kisco (33 NY2d 178, 185) lend any support to the town’s argument. In that case, section 452 of the Westchester County Administrative Code contained a "specific statutory grant of standing to challenge an adjacent municipality’s zoning actions”. Here, however, there is no such code or charter provision that would make the denial of standing in section 7-706 inapplicable to zoning matters in Nassau County. Likewise, Township of Riv. Vale v Town of Orangetown (403 F2d 684) does not bolster the town’s argument. That case involved a challenge in Federal court by a New Jersey township to a zoning change in an area of a New York town contiguous to the New Jersey township’s border. In such a situation, section 264 of the Town Law (the counterpart of Village Law, § 7-706, subd 1) obviously would not prevent a township in another State from attacking in Federal court a New York town’s zoning change.
We have recently said that "in enacting a zoning ordinance, consideration must be given to regional needs and requirements” because "zoning often has a substantial impact beyond the boundaries of the municipality.” (Berenson v Town of New Castle, 38 NY2d 102, 110.) Rather than burden the courts with the tasks of a regional planner, we invited the Legislature (p 111) to "make appropriate changes in order to foster the development of programs designed to achieve sound regional planning.” Our refusal today to grant the Town of North Hempstead standing, since it is based upon a specific statutory denial, is not inconsistent with the view we expressed in Berenson.
Although we must therefore dispose of Town of Nort. Hempstead on the standing issue, no such bar in Matter oí *342 Ruggiero prevents us from reaching the merits of this controversy.[4] Following a two-year study and review of the existing zoning in the village, and after three public hearings, the Board of Trustees of the Village of North Hills in 1970 enacted a revised Building Zone Ordinance. Among the districts established by the ordinance was a "Cluster Residence, R-CL District”. This was a "floating zone” whose boundaries were not fixed in the original ordinance, but were to be established by later amendments to the zoning map. Any property in the R-2 district (in which single-family detached dwellings on plots of at least two acres were permitted) could potentially be rezoned tó R-CL if certain requirements were met. Among those requirements were a minimum plot size of four acres. Permitted uses were limited to single-family dwellings in detached, semi-attached or attached (townhouse) structures, with overall density limited to four families per acre.[5] Following a public hearing, an application made by the intervenor-respondent Gut was approved by the board in 1974, making the Gut parcel the first to be rezoned R-CL. Thereafter, the petitioners, owners of properties which abut or are *343 located near the Gut parcel, commenced this article 78 proceeding.
The principal contention is that the part of the zoning ordinance authorizing the R-CL district as a floating zone is exclusionary and unconstitutionally discriminatory. The basis for this claim is that petitioner Ruggiero and other property owners whose parcels do not meet the four-acre requirement are frozen into the R-2 district, whereas owners of larger parcels may apply for the R-CL classification.
We first approved the use of floating zones in Rodgers v Village of Tarrytown (302 NY 115, 122-123). In that case this court dismissed a similar argument with the following statement: "As to the requirement that the applicant own a plot of at least ten acres, we find nothing therein unfair to plaintiff or other owners of smaller parcels.' The board undoubtedly found, as it was privileged to find, that garden apartments would blend more attractively and harmoniously with the community setting, would impose less of a burden upon village facilities, if placed upon larger tracts of land rather than scattered about in smaller units. Obviously, some definite acreage had to be chosen, and, so far as the record before us reveals, the choice of ten acres as a minimum plot was well within the range of an unassailable legislative judgment.” We have no difficulty in this case with the four-acre requirement established by the village. Certainly this makes the R-CL classification potentially available to a larger class of property owners than would, for example, the 10-acre minimum approved in Rodgers. Indeed, petitioners’ claim that the R-CL classification is unavailable to only seven owners of property presently zoned R-2 serves only to bolster the contrary view that the ordinance is neither impermissibly exclusionary nor unconstitutionally discriminatory.
Petitioners make one further attempt to distinguish Rodgers. They point out that in Rodgers any area in the village might make application to be included in the floating zone (provided, of course, the other requirements were met), whereas in this case, the R-CL classification may be applied only to parcels presently zoned R-2. We find that distinction to be of no significance here, especially since it appears that 80% of the land in the Village of North Hills presently is in the R-2 zone.
We also reject the claim that the challenged amendment was not "in accordance with a comprehensive plan” as re *344 quired by section 7-704 of the Village Law. Nothing in the record suggests that there has been anything here other than "comprehensiveness of planning, rather than special interest, irrational ad hocery. ” (Matter of Town of Bedford v Village of Mount Kisco, 33 NY2d 178, 188, supra.)
Nor do we find any merit to petitioners’ contention that the individual members of the board acted in an apparent conflict of interest in approving the ordinance and the amendment. None of the members owns any interest in the Gut parcel which was reclassified. Rather, the basis for this claim is that several of the members own parcels of real estate which meet the four-acre requirement and might, therefore, be reclassified R-CL at some future date. This claim is at best speculative. Petitioners do not argue that there has been a lack of compliance with section 809 of the General Municipal Law which sets out the applicable rules for disclosure in conflict of interest situations. Since it appears that most of the real property in the village meets the acreage requirements for reclassification, petitioners’ argument would make all but a handful of property owners in the village ineligible to sit on the board in such matters.[6]
For the foregoing reasons, the order of the Appellate Division should be affirmed in all respects.
Chief Judge Breitel and Judges Gabrielli, Jones, Fuchs-berg and Cooke concur; Judge Wachtler taking no part.
In each case: Order affirmed, with costs.

. We reject the town’s argument, that the consequence of the final words of the subdivision, "as hereinafter provided”, should be to limit the prohibition of judicial review only in an article 78 proceeding, as hypertechnical and unduly restrictive.

. The town claims that the zoning ordinance and amendment will cause it extensive ecological damage.

. We note that there is no consensus in the courts of other States as to whether municipalities have standing to challenge zoning of land lying outside its borders where there is no statute specifically governing standing. (See Standing of Municipal Corporation or Other Governmental Body to Attack Zoning of Land Lying Outside Its Borders, Ann., 49 ALR3d 1126.) Since that issue is not before us, we express no opinion as to whether the town would have standing in the absence of section 7-706.

. Although the trial court denied standing in Matter of Ruggiero, the Appellate Division disapproved of that much of the determination. Since the standing issue was not, raised in this appeal, we do not express an opinion in that regard.

. Section 4.56 of the ordinance sets out the requirements in detail:
"a. Permitted uses shall be limited to single family dwellings in detached, semi-attached or attached (town house) structures.
"b. The area of the site shall be at least 4 acres of contiguous property not traversed by streets.
"c. The overall density of a cluster development shall not exceed 4 families per gross acre.
"d. Every dwelling unit shall have access to a street, court, walkway or other accessway designed for public use through dedication, easement or right of way.
"e. At least 50% of the total area of the property shall be allocated for park or other common open space or recreational use.
"f. The minimum floor area of a dwelling unit shall be 1,200 square feet.
"g. No detached or semi-detached structure shall be erected within 24 feet of any other; no row house structure shall be erected within 40 feet of any other.
"h. Each row structure shall contain at least 4 and not more than 10 dwelling units.
"i. Every dwelling unit shall be located on and within a lot which shall be duly dimensioned and designated as the owner’s area of responsibility.
"j. No structure shall exceed a height of 2ió stories or 35 feet.
"k. No structure shall be sited to front within 150 feet of a major State or County highway.
"1. There shall be at least 1 enclosed and 1 surface on-site parking space for each dwelling.”

. We note that the Attorney-General has indicated that the failure to make proper disclosure of a conflict of interest would not, per se, invalidate an amendment to a zoning ordinance where all necessary procedural steps had been complied with. (1974 Atty Gen [Inf Opns] 106.)