MOBIL OIL CORPORATION *v.* TOWN OF WESTPORT

COTTER, C. J., BOGDANSKI, PETERS, PARSKEY and ARMENTANO, Js.

Argued November 7—decision released December 23, 1980

*J. Peter LaChance,* with whom was *Eugenie Dieringer,* for the appellant (plaintiff).

*Keith D. Dunnigan,* with whom, on the brief, was *Bruce L. Levin,* for the appellee (defendant).

PARSKEY, J.  The plaintiff contests a special assessment levied by the defendant in connection with a downtown parking facility known as the Baldwin parking lot constructed by the town of Westport during the 1960s.  A special assessment was levied by the board of selectmen on all properties directly benefited by the parking lot in order to recoup part of the capital costs of site acquisition and construction of the lot.  All properties lying within 500 feet of the lot were found to be directly and specially benefited.  The extent of the benefit and the amount of the assessment were determined by a formula which took into account (1) the value of the property as of the date of the assessment, (2) the amount of parking, if any, which might be required due to the existing use of the property and (3) the proximity of the property to the lot.

The plaintiff owns a parcel which abuts the lot and has been used as a gasoline station since the early 1930s.  On the basis of the above formula the plaintiff was assessed $10,611.  The trial court upheld the assessment.  On appeal, the plaintiff contests the trial court's conclusions in three respects: (1) the court erred in interpreting No. 568 of the 1953 Special Acts; 26 Spec. Acts 1116, No. 568; as amended by No. 86 of the 1965 Special Acts; 32 Spec. Acts 70, No. 86; to authorize involuntary special assessments, (2) the court incorrectly determined that the plaintiff's property was specially benefited and (3) the court erroneously held that the

formula used to compute the amount of the assessment was legally proper and correct as applied to the plaintiff. We discuss each claim in turn.

### STATUTORY AUTHORITY

The plaintiff first challenges the trial court's conclusion that No. 86 of the 1965 Special Acts[1] authorizes the board of selectmen of the town of Westport (board) to levy an involuntary special assessment on those properties especially benefited by the

[1] "[32 Spec. Acts 70, No. 86] SECTION 1. Section 3 of number 568 of the special acts of 1953 is amended to read as follows: The board of selectmen shall have the same powers to control traffic in parking areas as are provided by chapter 249 of the general statutes for traffic control on highways, and any amendments thereto, and shall have power to establish the rates to be charged for parking.

"SEC. 2. Section 4 of said act is amended to read as follows: The board of selectmen shall have power (1) to enter into agreements with owners of land or with any person claiming an interest therein for the acquisition of land or other property rights for the purposes provided herein; (2) to apportion and assess the whole or any portion of the cost of acquisition and construction of a parking area upon the land and buildings in the town of Westport which, in its judgment, are especially benefited thereby, whether they abut on such parking area or not, and upon the owners of such land and buildings, according to such rule as the board of selectmen adopts; (3) to enter into agreements with any person interested in the parking area and access thereto concerning the benefits accruing to him or the damages sustained. Such agreement may provide for a special assessment to be placed upon the affected property and for its collection in the same manner as town taxes over such period as the board of selectmen may determine. Upon the recording of such agreement in the Westport town clerk's office, it shall be binding upon the parties signing such agreement, their heirs, successors and assigns.

"SEC. 3. Section 5 of said act is repealed.

"SEC. 4. Section 6 of said act is amended to read as follows: Except as provided herein, the town of Westport and the property owners whose property is acquired or assessed shall have all the rights and shall be subject to all the duties with respect to parking facilities, including the power of eminent domain and assessment of benefits and damages, as are provided with respect to municipal sewerage systems in chapter 103 of the general statutes and any amendments thereto."

municipal parking area. This act amended certain provisions of No. 568 of the 1953 Special Acts.[2] The operative provision for present purposes is § 4, which is set out in three parts. Subsection (1) authorizes the board to enter into agreements for the acquisition of property for a parking facility. Subsection (2) authorizes the board to apportion and assess the cost of acquisition and construction of the parking area upon land specially benefited thereby. Subsection (3) authorizes the board to

[2] "[26 Spec. Acts 1116, No. 568] SECTION 1. The town of Westport shall have power to build, operate and maintain parking areas, including access thereto, in the town of Westport.

"SEC. 2. The town of Westport is empowered to own, and acquire, develop or fill in areas along the Saugatuck river or elsewhere, to be used for the purpose of building, operating and maintaining parking areas, including means of access thereto, to install parking meters on the public highways and other public places, including parking areas, and to collect the proceeds therefrom.

"SEC. 3. The board of selectmen shall have the same powers to control traffic in parking areas as are provided by chapter 112 of the general statutes for traffic control on highways, and shall have power to establish the rates to be charged for parking.

"SEC. 4. The board of selectmen shall have power (1) to enter into agreements with owners of land or with any person claiming an interest therein for the acquisition of land or other property rights for the purposes provided herein; (2) to assess benefits or damages for such acquisition; (3) to enter into agreements with any person interested in the parking area and access thereto concerning the benefits accruing to him or the damages sustained. Such agreement may provide for a special assessment to be placed upon the affected property and for its collection in the same manner as town taxes over such period as the board of selectmen may determine. Upon the recording of such agreement in the Westport town clerk's office, it shall be binding upon the parties signing such agreement, their heirs, successors and assigns.

"SEC. 5. The benefits assessed for the purposes herein provided shall not be limited by the provisions of section 2159 of the general statutes.

"SEC. 6. Except as provided herein, the town of Westport and the property owners affected shall have all the rights and shall be subject to all the duties with respect to parking facilities including the power of eminent domain, as are provided with respect to town highways in chapter 105 of the general statutes."

enter into agreements with the owners of specially benefited properties with respect to the determination of benefits and damages. The plaintiff's contention that a fair reading of this section leads to the conclusion that the board may levy a special assessment only as a result of an agreement with the affected property owners is without merit.

It is axiomatic that a statute which is clear and unambiguous is not subject to modification by construction; *Jones* v. *Civil Service Commission,* 175 Conn. 504, 509, 400 A.2d 721 (1978); and is to be given effect in accordance with its plain language unless to do so would thwart its purpose. *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 489, 400 A.2d 726 (1978). The 1965 special act authorizes the defendant to acquire property for parking purposes either by eminent domain (§ 6) or by agreement (§ 4[1]) and to levy a special assessment on the specially benefited properties either by agreement (§ 4[3]) or under its independent authority (§ 4[2]). To hold otherwise would fly in the face of the clearly expressed legislative will.

### Special Benefit

The plaintiff next contends that there is no basis for the court's conclusion that the plaintiff's property was specially benefited by the defendant's parking facility. The thrust of the plaintiff's argument is that the plaintiff's gas station receives no direct and immediate benefit from the defendant's parking lot.

A "special assessment" is a "*local* assessment imposed . . . upon a limited class of persons interested in a *local* improvement; who are assumed to be benefitted by the improvement to the extent

of the assessment." *Bridgeport* v. *N. York & N. Haven R. R. Co.,* 36 Conn. 255, 262–63 (1869). To be valid the benefit must be direct, immediate, appreciable and certain. *Appeal of Cohen,* 117 Conn. 75, 84, 166 A. 747 (1933); *Naugatuck Railroad Co.* v. *Waterbury,* 78 Conn. 193, 196–97, 61 A. 474 (1905). The assessment may not materially exceed the benefits conferred. *Whitmore* v. *Hartford,* 96 Conn. 511, 519, 114 A. 686 (1921); *Naugatuck Railroad Co.* v. *Waterbury,* supra. Whether a given property is specially benefited by a public improvement involves a question of fact. *O'Rourke* v. *Stamford,* 179 Conn. 342, 345, 426 A.2d 311 (1979); *Dellaripa's Appeal,* 88 Conn. 565, 571, 92 A. 116 (1914).

The trial court concluded that the plaintiff's property was specially benefited both in its current use as a gas station and in its highest and best use (retail stores). With respect to the current use, there was sufficient evidence of special benefit to the gas station from the traffic generated by the existence of the parking facility to justify the imposition of the special levy. There was also evidence supporting the court's conclusion based on the property's highest and best use. The plaintiff's contention that only current use is applicable in special assessment cases is without merit.

An examination of the cases on special assessments cited by the plaintiff discloses that they do not stand for the proposition advanced by the plaintiff. The cases which have limited consideration of benefit to current use have been those where the current use appeared to be permanent in character. *Hartford* v. *West Middle District,* 45 Conn. 462, 464 (1878) (school district); *Bridgeport* v. *N. York*

*& N. Haven R. R. Co.,* supra, 264 (railroad); *Clapp* v. *Hartford,* 35 Conn. 66, 80 (1868) (church). In *N. Y., N. H. & H. R. R. Co.* v. *New Britain,* 49 Conn. 40 (1881), the land, although purchased by the railroad for the purpose of storing freight cars and used exclusively for that purpose, was held subject to a special sewer assessment because the land was unrestricted, was unoccupied by buildings and was eligibly situated for mechanical and manufacturing purposes. Id., 44.

So long as the land is not restricted or the current use is not permanent in character, there is no rule of law which precludes a special assessment based on potential use of the subject property. "The 'highest and best use' concept . . . has to do with the use which will most likely produce the highest market value, greatest financial return, or the most profit from the use of a particular piece of real estate." *State National Bank* v. *Planning & Zoning Commission,* 156 Conn. 99, 101, 239 A.2d 528 (1968). In levying a special assessment, a governmental unit is not required to limit its impact to current land use; it may also take into account the economic forces at work in the marketplace.

### Assessment Formula

The formula adopted by the board for the special assessment provided for the cost of the project to be apportioned on the basis of the current assessed valuation of the subject property adjusted to take into account the proximity of the property to the parking facility and a factor reflecting the number of parking spaces needed by the property. The proximity factor was arrived at as a result of personal observations of an ad hoc committee appointed by the Westport first selectman. This committee

concluded that property within a radius of 500 feet of the parking area would be benefited by it and recommended that the benefited area be divided into six zones, each to be given a numerical value representing the distance of the property from the facility. One half of the cost of the project was to be apportioned on the basis of the proximity factor multiplied by the current assessed valuation, the other half on the basis of the parking factor. In the case of the plaintiff's property, the parking factor was given a value of zero. Therefore, the plaintiff was not assessed for any benefit conferred by the mere presence of additional parking spaces. The factor that was included in the plaintiff's assessment, the current assessment for property tax purposes adjusted for proximity to the facility, bears a reasonable relationship to the benefits conferred. See *Embree* v. *Kansas City & L. B. Road Dist.*, 240 U.S. 242, 250, 36 S. Ct. 317, 60 L. Ed. 624 (1916); 70 Am. Jur. 2d, Special or Local Assessments §§ 89, 97.

There is no error.

In this opinion the other judges concurred.