TOWER BUSINESS PARK ASSOCIATES NUMBER ONE
LIMITED PARTNERSHIP *v.* WATER POLLUTION
CONTROL AUTHORITY OF THE
TOWN OF SIMSBURY
(13762)

HEALEY, SHEA, CALLAHAN, GLASS and HULL, Js.

Argued October 12—decision released November 28, 1989

*Charles L. Howard,* with whom, on the brief, was *Timothy J. Covello,* for the appellant (defendant).

*Elliott B. Pollack,* with whom was *Linda M. Wilder-Curtis,* for the appellee (plaintiff).

SHEA, J. This is an appeal authorized by General Statutes § 7-250[1] from a supplemental sewer assessment

---

[1] General Statutes § 7-250 provides in part: "No assessment shall be made until after a public hearing before the water pollution control authority at

levied against property on Hopmeadow Street in Simsbury owned by the plaintiff Tower Business Park Associates Number One Limited Partnership. The assessment was imposed by the defendant Water Pollution Control Authority of Simsbury after the plaintiff had converted a factory building on the property at the time it was purchased in 1984 into a two story office building. As its authority for the supplemental assessment, the defendant relied upon General Statutes § 7-249,[2] which provides that "[b]enefits to build-

which the owner of the property to be assessed shall have an opportunity to be heard concerning the proposed assessment. . . . Any person aggrieved by any assessment may appeal to the superior court for the judicial district wherein the property is located and shall bring any such appeal to a return day of said court not less than twelve nor more than thirty days after service thereof and such appeal shall be privileged in respect to its assignment for trial. Said court may appoint a state referee to appraise the benefits to such property and to make a report of his doings to the court. The judgment of said court, either confirming or altering such assessment, shall be final. No such appeal shall stay proceedings for the collection of the particular assessment upon which the appeal is predicated but the appellant shall be reimbursed for any overpayments made if, as a result of such appeal, his assessment is reduced."

[2] "[General Statutes] Sec. 7-249. ASSESSMENT OF BENEFITS. At any time after a municipality, by its water pollution control authority, has acquired or constructed, a sewerage system or portion thereof, the water pollution control authority may levy benefit assessments upon the lands and buildings in the municipality which, in its judgment, are especially benefited thereby, whether they abut on such sewerage system or not, and upon the owners of such land and buildings, according to such rule as the water pollution control authority adopts, subject to the right of appeal as hereinafter provided. Benefits to buildings or structures constructed or expanded after the initial assessment may be assessed as if the new or expanded buildings or structures had existed at the time of the initial assessment. Such benefits and benefits to anticipated development of land zoned for other than business, commercial or industrial purposes or land classified as farm land, forest land or open space land on the last completed grand list of the municipality in which such land is located, pursuant to the provisions of sections 12-107a to 12-107e, inclusive, shall not be assessed until such construction or expansion or development is approved or occurs. In case of a property so zoned or classified which exceeds by more than one hundred per cent the size of the smallest lot permitted in the lowest density residential zone allowed under zoning regulations or, in the case of a town having no

ings or structures constructed or expanded after the initial assessment may be assessed as if the new or expanded buildings or structures had existed at the time of the initial assessment." The trial court rendered judgment for the plaintiff, thus invalidating the assess-

zoning regulations, a lot size of one acre in area and one hundred fifty feet in frontage, assessment of such excess land shall be deferred until such time as such excess land shall be built upon or a building permit issued therefor or until approval of a subdivision plan of such excess property by the planning commission having jurisdiction, whichever event occurs first at which time assessment may be made as provided herein. No lien securing payment shall be filed until the property is assessed. The sum of initial and subsequent assessments shall not exceed the special benefit accruing to the property. Such assessment may include a proportionate share of the cost of any part of the sewerage system, including the cost of preliminary studies and surveys, detailed working plans and specifications, acquiring necessary land or property or any interest therein, damage awards, construction costs, interest charges during construction, legal and other fees, or any other expense incidental to the completion of the work. The water pollution control authority may divide the total territory to be benefited by a sewerage system into districts and may levy assessments against the property benefited in each district separately. In assessing benefits against property in any district the water pollution control authority may add to the cost of the part of the sewerage system located in the district a proportionate share of the cost of any part of the sewerage system located outside the district but deemed by the water pollution control authority to be necessary or desirable for the operation of the part of the system within the district. In assessing benefits and apportioning the amount to be raised thereby among the properties benefited, the water pollution control authority may give consideration to the area, frontage, grand list valuation and to present or permitted use or classification of benefited properties and to any other relevant factors. The water pollution control authority may make reasonable allowances in the case of properties having a frontage on more than one street and whenever for any reason the particular situation of any property requires an allowance. Revenue from the assessment of benefits shall be used solely for the acquisition or construction of the sewerage system providing such benefits or for the payment of principal of and interest on bonds or notes issued to finance such acquisition or construction. No assessment shall be made against any property in excess of the special benefit to accrue to such property. The water pollution control authority shall place a caveat on the land records in each instance where assessment of benefits to anticipated development of land zoned for other than business, commercial or industrial purposes or land classified as farm land, forest land or open space land has been deferred."

ment, "because it was not determined on the basis of the actual benefit to the subject property adjusted to the time of the initial assessment." The defendant has appealed, claiming that the court erred in finding that the plaintiff's evidence was sufficient to overcome the presumption of the validity of the supplemental assessment. We conclude that the evidence presented was insufficient as a matter of law to overcome this presumption and therefore find error.

The subordinate facts are undisputed. In 1977 the defendant levied a special benefit assessment of $29,672.15 upon the property involved, which was then owned by Hartford Special Machinery Company (Hartford Special), a manufacturer. This assessment resulted from the construction of sanitary sewers in Simsbury to which the property had access. Hartford Special paid the assessment and used the sewers in conjunction with the operation of its factory until 1984, when the property was sold to the plaintiff.

During 1984 and 1985 the plaintiff renovated the large one story factory building, converting it into a two story office building and thereby adding 25,657 square feet of interior floor space above the 92,417 square feet contained in the original building. Two smaller buildings were removed from the property. Based on the 1974 valuations in effect when the initial sewer assessment was levied, the assessed value of the property as of that year would have increased from $650,000 to $3,141,310 as a result of the renovations. Calculating the sewer assessment at the rate of $44.50 per $1000 of assessed value and deducting the initial assessment, which had been paid, the defendant imposed a supplemental assessment of $110,116.14 on the plaintiff's property.

In addition to assessments for the cost of installing sanitary sewers, the defendant also charges property

owners for the use of the sewers. Because the plaintiff has decreased its use of the sewers as compared with Hartford Special, the defendant has granted the plaintiff's request for a reduction in the sewer use charge.

I

As the trial court recognized, there is a presumption as to the "regularity, validity and correctness" of a special benefit assessment that imposes on one challenging the assessment the burden of proof. *Katz* v. *West Hartford,* 191 Conn. 594, 602, 469 A.2d 410 (1983); see *Anderson* v. *Litchfield,* 4 Conn. App. 24, 28, 492 A.2d 210 (1985). "An appellant may overcome this presumption by introducing competent evidence that the assessment is greater than the increase in the market value of the property due to the improvement." *Katz* v. *West Hartford,* supra, 602–603. Section 7-249 expressly provides that "[t]he sum of initial and subsequent assessments shall not exceed the special benefit accruing to the property."

The trial court concluded that the plaintiff had produced sufficient countervailing evidence to overcome the presumption of the validity of the assessment. The memorandum of decision does not specifically identify the evidence relied upon, but the plaintiff, in support of the court's conclusion, refers to the testimony of his expert witnesses that the use of the sewer had decreased since the factory building had been converted into an office building and that no additional benefit from the sewer had resulted simply from the conversion. The plaintiff claims that this evidence, which the court apparently credited, satisfies the standard of "competent evidence that the assessment is greater than the increase in the market value of the property due to the improvement," which is necessary to overcome the presumption of the validity of an assessment. *Katz* v. *West Hartford,* supra, 603.

Section 7-249 provides that supplemental assessments for benefits to new or expanded buildings "may be assessed as if the new or expanded buildings or structures had existed at the time of the initial assessment." The plaintiff does not claim that this prescribed method for calculating the amount of a special assessment has not been followed by the defendant. It maintains, nevertheless, that the application of the statutory formula to its property has resulted in an excessive assessment.

The evident purpose of this provision of § 7-249 is to allow a municipality to impose a supplemental assessment for new or improved buildings in an amount that, together with the initial assessment, will equal the assessment that would have been made if these improvements had existed at the time of the initial assessment. In order to defeat the supplemental assessment that has been imposed on its property, therefore, the plaintiff must prove that, together with the initial assessment, it exceeds the benefit that access to the sewers would have conferred upon the property as a whole at the time of the initial assessment if the present office building had then been erected. "The monetary value of the special benefit conferred upon a piece of property by the presence of a sewerage system must be calculated by the difference between the market value of the realty with and without the sewerage system, even though such a measurement may mean that the cost of the sewerage system cannot be fully recouped by the town." *Bridge Street Associates* v. *Water Pollution Control Authority,* 15 Conn. App. 140, 144, 543 A.2d 1351 (1988).

The plaintiff does not claim to have presented evidence of the market value of its office building property as of the time of the initial assessment either with or without sewer access. The real estate appraiser who testified in its behalf admitted that he had made no com-

parison of the value of the property with and without sewers. Thus, it is clear that, under this standard method of determining the benefit that has accrued to property from the installation of sewers, the plaintiff has not sustained its burden.

The fallacy of the plaintiff's analysis, which rests upon the undisputed fact that the volume of sewage generated by the office building is less now than when the former factory building was in operation, is that, by concentrating exclusively on the comparative use made of the facility, it wholly ignores the increase in the market value of property that ordinarily results from access to a sewerage system. See *Katz* v. *West Hartford,* supra, 603. Many authorities have rejected current actual use as a determinative factor in the assessment of benefits, since it often is unrelated to market value and fails to reflect the increase in market value resulting from the installation of sewers. 14 E. McQuillin, Municipal Corporations (3d Ed.) § 38.33.20; see *Mobil Oil Corporation* v. *Westport,* 182 Conn. 554, 559–60, 438 A.2d 768 (1980). If the benefit to property from sewer access were to be measured by actual use rather than by its impact on market value, an assessment for benefits under § 7-249 would be a virtual duplication of the charges made by the defendant for use of the sewers as authorized by General Statutes § 7-255.[3]

---

[3] General Statutes § 7-255 (a) provides in part: "The water pollution control authority may establish and revise fair and reasonable charges for connection with and for the use of a sewerage system. The owner of property against which any such connection or use charge is levied shall be liable for the payment thereof. . . . In establishing or revising such charges the water pollution control authority may classify the property connected or to be connected with the sewer system and the users of such system, including categories of industrial users, and may give consideration to any factors relating to the kind, quality or extent of use of any such property or classification of property or users including, but not limited to, (1) the volume of water discharged to the sewerage system, (2) the type or size of building connected with the sewerage system, (3) the number of plumbing fixtures connected with the sewerage system, (4) the number of persons

The plaintiff's argument that whatever benefit sewer access may have provided to its property occurred at the time the installation was made and did not increase when the building was enlarged overlooks the fact that in Simsbury special benefit assessments are based upon grand list values. Section 7-249 provides for supplemental assessments upon new construction "as if the new or expanded buildings or structures had existed at the time of the initial assessment." The plaintiff does not claim that the sum of the initial and supplemental assessments for its property exceeds the amount of the assessment that would have been imposed under the Simsbury formula if the converted office building had existed when the sewers were installed. Although the benefit of sewer access, in a physical sense, may be said to accrue when a building is connected, it is not inappropriate, when grand list values are the measure of that benefit, to increase the initial assessments as those values increase because of new construction on the property.

Because the plaintiff produced no evidence that the total assessment, both initial and supplemental, exceeds the difference in the market value of its property with and without sewers as of the time of the original assessment, the presumption of the validity of the assessment has not been overcome and the trial court's conclusion to the contrary was clearly erroneous.

---

customarily using the property served by the sewerage system, (5) in the case of commercial or industrial property, the average number of employees and guests using the property and (6) the quality and character of the material discharged into the sewerage system. The water pollution control authority may establish minimum charges for connection with and for the use of a sewerage system. Any person aggrieved by any charge for connection with or for the use of a sewerage system may appeal to the superior court for the judicial district wherein the municipality is located and shall bring any such appeal to a return day of said court not less than twelve or more than thirty days after service thereof. The judgment of the court shall be final."

## II

The plaintiff has advanced four alternative grounds for affirming the judgment: (1) the conversion of the factory into an office building did not constitute an expansion within the intent of § 7-249; (2) the supplemental benefit assessment is unconstitutional because it is not based on any increase in sewer use; (3) the assessment has resulted in imposing on its property a disproportionate share of the cost of a public improvement in violation of its constitutional right to equal protection of the laws; and (4) the provision of § 7-249 requiring that caveats for deferred assessments filed in the land records for the anticipated development of land other than commercial land also creates an unconstitutional disparity in the treatment of some property owners as compared with others.

### A

A supplemental assessment under § 7-249 may be imposed only when "buildings or structures" are "constructed or expanded after the initial assessment." The defendant claims that the present office building constitutes an expansion of the original factory building because 25,657 square feet of floor space have been added by the construction of a second story to the building. The plaintiff maintains that this addition does not constitute an expansion as contemplated by § 7-249 because the word "expanded" must be taken to refer to an increase in sewer use in order to justify a supplemental assessment.

We agree with the trial court that the addition of a second story to the factory building was an expansion. Vertical as well as horizontal enlargements of a building are encompassed by the word "expanded" as used in § 7-249. The plaintiff's interpretation of the term as applying only to construction resulting in increased

sewer use is unsupported by the language of the statute and is at variance with the legislative intention expressed in § 7-255 (a) to allow separate charges for sewer use in addition to assessments for installation of the sewerage system. It is also inconsistent with the reference in § 7-249 to "grand list valuation" as one of the "relevant factors" in making assessments.

B

It is well established that if an assessment for benefits from a public work is imposed on a property likely to use the facility, the amount thereof cannot exceed the particular benefit conferred without trespassing on constitutional rights. *Norwood* v. *Baker,* 172 U.S. 269, 279, 19 S. Ct. 187, 43 L. Ed. 443 (1898); *Connecticut Ry. & Lighting Co.* v. *Waterbury,* 127 Conn. 617, 620, 18 A.2d 700 (1941); *Anderson* v. *Litchfield,* supra, 29. The plaintiff claims that, because sewer use has declined since the factory building has been converted into offices, the assessment must necessarily exceed the value of the benefit presently resulting from the availability of a sewer system.

This constitutional claim is predicated upon the plaintiff's insistent contention that the volume of waste passing from the building into the sewerage system is the only measure of benefit that can be properly utilized. We have previously discussed and rejected this argument which overlooks the specification in § 7-249 of "grand list valuation" as a relevant factor in making an assessment. It is clear that no evidence of the valuation of the property as presently improved with and without sewers has been presented in the trial court. The plaintiff, therefore, has not proved the factual predicate upon which this constitutional claim rests, i.e., that the assessments, both initial and supplemental, exceed any increase in value that has resulted from the sewer installation.

## C

The United States Supreme Court has recently applied the equal protection principle to invalidate increases in assessments of properties that recently have been sold based upon the current selling price, when no appropriate adjustment has been made in the assessment of properties not recently transferred and gross disparities in assessments of comparable properties have resulted from this practice. *Allegheny Pittsburgh Coal Co.* v. *County Commission of Webster County,* 488 U.S. 336, 109 S. Ct. 633, 102 L. Ed. 2d 688 (1989). The plaintiff relies upon this decision in claiming that its assessment, because of the substantial grand list valuation of its property, is disproportionate as compared to property owners with lower valuations who make the same use of the sewer and thus receive the same benefit.

Once again the plaintiff attempts to focus solely upon the physical use of the sewer by each property owner rather than upon the increase in market value of the properties resulting from sewer access. No claim is made that the valuation of the plaintiff's property that served as the basis for the supplemental assessment was disproportionate in relation to those used in assessing comparable properties, as in *Allegheny Pittsburgh Coal Co.* Section 7-249 plainly authorizes the use of grand list valuation as an alternative to area and frontage in making sewer assessments. We are not aware of any authority holding that there is a violation of equal protection when public improvement assessments are based upon the values of the properties benefited, subject to the limitation that no assessment may exceed the benefit conferred.

## D

Section 7-249 requires that a caveat be placed on the land records "in each instance where assessment of

benefits to anticipated development of land zoned for other than business, commercial or industrial purposes or land classified as farm land, forest land or open space land has been deferred." This requirement corresponds to another provision of § 7-249 that defers assessments for benefits to "anticipated development of land zoned for other than business, commercial or industrial purposes or land classified as farm land, forest land or open space land . . . until such construction or expansion or development is approved or occurs." Prior to 1973, when the provisions excluding from the benefit of an assessment deferral land zoned for "business, commercial or industrial purposes" were inserted; Public Acts 1973, No. 73-523; the statute provided that benefits for anticipated development of *any* land could not be assessed "until such development is approved or occurs." General Statutes (Rev. to 1972) § 7-249. The legislative history of the 1973 amendment indicates that the purpose of that enactment was to discourage speculation in commercial land by removing such land from the assessment deferral provision.[4] The legislators believed that such deferrals were inducing owners to hold vacant commercial land without developing it.

---

[4] In the House of Representatives, Representative Morton J. Blumenthal explained the purpose of the 1973 amendment as follows: "Yes, Mr. Speaker. Basically, this statute amends Sec. 7-249 of our General Statutes and the problem with the present definition is it reads as such—land used for other than business, commercial or industrial purposes. In other words if the land is owned for business, commercial, industrial but is not being used as such, under the present law they are entitled to an exemption from the sewer assessment just because of the fact that the land is vacant. This, of course, is inappropriate because this type of land is commercial, speculative type land and the statute and the intent of this bill is to allow the deferment of assessment for land that's used for open space, forest land or agricultural purposes. . . . It's a good bill and it ought to pass." 16 H.R. Proc., Pt. 11, 1973 Sess., p. 5401.

In the Senate, Senator Richard C. Bozzuto remarked upon the proposed amendment as follows: "Yes, Mr. President. The basic purpose for the proposed bill is to provide an accurate and workable definition of the land entitled to deferred assessments proposed to read as follows: Lands owned

Apparently they did not perceive similar evils with respect to land zoned for residences or land classified as farm, forest or open space land.

It appears that in challenging the exemption of commercial property from the requirement of a caveat for a deferred assessment the plaintiff is implicitly attacking the validity of the exclusion of commercial property from the assessment deferral provision of § 7-249. If commercial property is not entitled to a deferral of a sewer assessment, it obviously would not be entitled to the same treatment with respect to the need for a caveat as properties where the assessments had been deferred. Thus, it is too plain for argument that the exclusion of commercial property from the caveat requirement, which is the sole ground of the plaintiff's equal protection claim, rests upon a rational basis so long as the separate classification of such property for the purpose of an assessment deferral remains.

Because the plaintiff in neither its complaint nor its brief has expressly challenged the validity of the exclusion of commercial property from the assessment deferral provision of § 7-249 in accordance with the 1973 amendment, it would be inappropriate to consider that subject in this appeal. Furthermore, the record before us contains insufficient facts to indicate whether,

for other than business, commercial or industrial purposes, or land classified as farm-land, forest-land, etc., etc.

"Basically, the problem with the present statute is that lands zoned for business, commercial or industrial purposes, but which are not being used as such, are entitled to the exemption from sewer assessment, because of the fact that it is being used as open space or vacant land. This is particularly inappropriate because this type of land usually is the most expensive and valuable and desirable land in a town which is being sold at huge prices, and yet the owners are entitled to sewer assessment deferment. The proposed change would simply allow assessment of land zoned for business, commerical or industrial uses, unless it is classified as farm, forest, or open-space land, by the assessor pursuant to the applicable statutes. I move its passage on the Consent Calendar." 16 S. Proc., Pt. 8, 1973 Sess., pp. 3897–98.

absent the exclusion for commercial property created by the amendment, the plaintiff's property, upon which a factory building existed at the time of the initial assessment, would then have qualified for an assessment deferral, which is available only with respect to "anticipated development of land." It is also unclear how the assessment deferral provision is applied with respect to supplemental assessments resulting from new construction or expansion of existing buildings, since the duration of any such deferment under § 7-249 lasts only "until such construction or expansion or development is approved or occurs." We leave these problems, which have not been briefed by the parties, to another time.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendant.

In this opinion the other justices concurred.