[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal pursuant to Connecticut General Statutes 7-250 from a sewer assessment in the amount of $11,666 against the property of the plaintiffs, Glen O. Pugh and Maureen C. Pugh. The plaintiffs' property is a three-family dwelling located at 1051 North street, Suffield, Connecticut.
The plaintiffs have claimed that the assessment levied CT Page 4811 by the defendant, Water Pollution Control Authority ("WPCA") against their property is improper, illegal, invalid or void in one or more of the following ways:
 (a) The assessment exceeds the special benefit accruing to the premises by reason of the sewer system;
 (b) the sum levied as an assessment exceeds the fair proportion of the expenses to be paid on account of the public improvement affecting the property;
 (c) the property does not consist of three residential units;
 (d) the defendant did not give consideration to special factors of the property, such as, without limitation, area frontage, grand list valuation and present use in determining the amount of the assessment.
Connecticut General Statutes 7-249 provides that no assessment shall be made against any property in excess of the special benefit to accrue to such property. The special benefit is measured by the difference between the value of the property with sewers and the value of the property without sewers. Anderson v. Town of Litchfield, 4 Conn. App. 24,27, 492 A.2d 210 (1985). The burden of proving that a special benefit assessment is invalid because it exceeds the particular dollar benefit accruing to the land is on the property owner. Anderson v. Town of Litchfield, supra.
The special benefit assessment is presumed to be valid and correct. Katz v. West Hartford, 191 Conn. 594, 602,469 A.2d 410 (1983). The presumption is equivalent to prima facie proof that the special assessment does not exceed the special benefit. The presumption exists until the evidence persuades the trier at least that the non-existence of the presumed fact is as probable as its existence. Id. at 603, n. 3.
In this case the plaintiffs failed to produce any credible evidence to show that the $11,666 assessment exceeded the special benefit accruing to their property CT Page 4812 because of the availability of public sewers. The plaintiffs introduced the testimony and appraisal report of Peter Marsele. The report used the sales prices of three multi-family dwellings on which to base a value estimate of the Pugh property. All of the comparable sales took place in Windsor Locks, and not in Suffield, where the plaintiffs' property is located. All of the sales were of multi-family dwellings which had water and sewers. The sales prices of the three comparable properties ranged from $165,000 to $187,900. Without any adjustment or exploration, the appraiser used those three prices to produce a valuation for the Pugh property of $210,000.
The appraiser did not refer to the values of any property without sewers as the basis for his opinion. Rather, he merely opined that the value of the Pugh property without sewers was $205,000. This opinion lacked any basis other than Mr. Marsele's own personal experience. Neither the appraiser's report nor his testimony provided any support for his opinion that the special benefit to the subject property was $5,000.
Based on the lack of any credible evidence that the amount of the assessment exceeded the special benefit to the Pugh property, the plaintiffs failed to overcome the presumption of the validity of the assessment. Moreover, the defendant presented appraisal testimony which was far more credible than that presented by the plaintiffs. The defendants produced the testimony and report of an appraiser, Jerry R. Adkins. Mr. Adkins based his opinion of the special benefit accruing to the plaintiffs' property due to the presence of sewers by analyzing sales prices of land without sewers and land with sewers. The land sales upon which Mr. Adkins based his opinion were for sales of land in Suffield, Connecticut. Three parcels of land did not have sewers. The sales price per acre of those parcels ranged from $33,018 to $35,000, with an average price per acre for land without sewers of $33,425.33. Mr. Adkins further relied on the sales of ten properties with sewers. The sales price per acre of those properties ranged from $22,332 to $107,142, with an average sales price per acre of $56,636. A comparison of the average sales price per acre of the properties without sewers and those with sewers formed the basis of Mr. Adkins' opinion that the special benefit to the plaintiffs' property was $20,000. CT Page 4813
Mr. Adkins did not assign any value to the septic tank existing on the Pugh's property at the time of the assessment. He stated that the Pugh property was located in an area where many septic systems had failed, and he believed the Pugh's septic system could fail at any time.
The plaintiffs failed to produce any evidence that the $11,666 sum of the assessment exceeded the fair proportion of expenses to be paid on account of the sewer. The defendant introduced evidence that the total cost of the installation of public sewers in the area, which included the sewer line on the plaintiffs' property, was approximately $2,200,000, and that the Water Pollution Control Authority was only likely to recover approximately $488,000 through assessment. As a result, the portion of the sewer cost to be paid by property owners directly benefiting from the sewer line is less than 25% of the cost.
The plaintiffs claim that their property was improperly assessed as containing three residential units. They claim that their property contains two residential units plus an in-law apartment.
Glen Pugh testified that his property consisted of three floors, that each floor contained one dwelling unit, each of which contained a kitchen, bathroom and a separate entrance. In addition, both the plaintiffs' appraiser and the defendant's appraiser stated that the Pughs' property was a three-family dwelling. The defendant presented evidence that the WPCA adopted the following criteria for determining whether a dwelling unit was considered an independent dwelling unit for purposes of sewer assessment: (1) that the unit contain separate living quarters, including full toilet facilities, and; (2) that the unit had direct access from the outside into a common hall so that access to the unit did not require one occupant to go through the living quarters of another occupant, and that the unit provide kitchen facilities for the exclusive use of the unit's occupants. It was clear from the evidence that all units on the Pugh property satisfied the above criteria and, therefore, the property was properly assessed as a three-dwelling unit.
Finally, the plaintiffs claim, in effect, that the unit charge assessment method used by the defendant is not CT Page 4814 permitted by 7-249. The plaintiffs claim that 7-249
requires the defendant to consider attributes peculiar to the property in question in determining an assessment. These attributes include area frontage, grand list valuation and present use. The plaintiffs have engaged in a myopic view of7-249, which gives a water pollution control authority wide discretion in setting assessments. The statute suggests, but does not mandate, factors which a water pollution control authority may take into consideration. Section 7-249
provides in pertinent part:
 The water pollution control authority may levy benefit assessments upon the lands and buildings in the municipality which, in its judgment, are especially benefited thereby, . . . according to such rule as the water pollution control authority adopts . . . . Such assessment may include a proportionate share of the cost of any part of the sewerage system, including the cost of preliminary studies and surveys, detailed working plans and specifications, acquiring necessary land or property or any interest therein, damage awards, construction costs, interest charges during construction, legal and other fees, or any other expense incidental to the completion of the work . . . in assessing benefits and apportioning the amount to be raised thereby among the properties benefited, the water pollution control authority may give consideration to the area, frontage, grand list valuation and to present or permitted use or classification of benefited properties and to any other relevant factors.
The Connecticut Supreme Court has held that an assessment formula will be upheld where it bears a reasonable relationship to the benefits conferred. Gaynor-Stafford Industries, Inc. v. Water Pollution Control, 192 Conn. 638,474 A.2d 752, cert. denied, 469 U.S. 932 (1984); Mobil Oil Corporation v. Westport, 182 Conn. 554, 438 A.2d 768 (1980). In this case the defendant introduced evidence that in 1981 the WPCA adopted the "unit charge" method of assessing for sewer benefits, after it determined that the previous assessment method was outdated. The previous assessment method was based on front footage of the property, lateral CT Page 4815 connection charge, and the area of the property. It was adopted when there were, generally, only single family residential properties in the Town of Suffield. However, the WPCA decided that its prior assessment method would not permit an adequate sewer assessment for multi-family dwelling units. The WCPA based the initial "unit charge" assessment of $3,000 per dwelling unit on the amount it required to recover for existing sewer construction projects and on the assumption that each dwelling unit, whether it was a single family residence, a condominium, or an apartment, was benefited equally by the presence of sewers: the benefit consisted of having sewage disposed of through public sewers. Prior to adopting the unit charge method of assessment, a superintendent of the WPCA requested the Connecticut Office of Policy and Management to conduct a survey of sewer assessment methods used in other Connecticut towns. This survey showed that the unit charge method and the front footage method were used with approximately equal frequency by Connecticut municipalities and they far outnumbered any other assessment method used.
During the early 80's there were a number of septic system failures in Suffield, which caused the town to engage in large scale sewer construction programs. That construction included the upgrading and expansion of Suffield's sewage treatment plant and construction of new sewer lines.
In 1989 the WPCA revised its unit assessment amount from $3,000 per dwelling unit to $5,000 per dwelling unit. In doing so the WPCA considered: 1) the impact of inflation over the years from 1981, when it initially imposed the $3,000 per dwelling unit charge, until 1989; 2) the average cost of installing sewers along an average size property; 3) the cost of repairing and renovating malfunctioning septic systems; and 4) the cost of installation of new septic systems meeting all health codes. After the increase in the assessment, a number of owners of multiple-unit residential structures complained about the impact of the assessment. Thereafter, the WPCA revised its assessment formula for multiple-unit dwellings such that the first dwelling unit in a structure was assessed at $5,000 and succeeding dwelling units were assessed at two-thirds of $5,000.
The assessment method used by the Town of Suffield CT Page 4816 clearly bore a reasonable relationship to the benefit conferred on owners of dwelling units by the presence of public sewers. As long as that benefit assessment had a reasonable relation to the benefit, it was not necessary for the WPCA to individually examine each property prior to determining a sewer assessment amount.
For the foregoing reasons, the plaintiffs' appeal is dismissed.
Aurigemma, J.