# 777 RESIDENTIAL, LLC *v.* THE METROPOLITAN DISTRICT COMMISSION
## (SC 20339)

Robinson, C. J., and Palmer, D'Auria,
Mullins, Kahn and Ecker, Js.*

*Syllabus*

Pursuant to statute (§ 7-249), after the acquisition or construction of a sewerage system, a municipality's water pollution control authority may levy benefit assessments on the owners of properties and buildings that are benefited thereby, and "[b]enefits to buildings or structures constructed or expanded after the initial assessment may be assessed as if the new or expanded buildings or structures had existed at the time of the initial assessment."

---

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

777 Residential, LLC *v.* Metropolitan District Commission

The plaintiff appealed to the trial court, challenging a supplemental sewerage benefit assessment levied pursuant to § 7-249 by the defendant, the Metropolitan District Commission, against certain real property owned by the plaintiff after the plaintiff converted a commercial office building on the property into a 285 unit residential condominium community. The plaintiff claimed that the defendant lacked authority to levy the supplemental assessment, reasoning that, since the initial assessment against the owners of the property when it was a two-story building in 1849, there had been no new construction or expansion of the building or structures on the property, as required by § 7-249 for the levying of a supplemental assessment. The plaintiff further claimed that the defendant violated § 7-249 by using a different method for calculating the supplemental assessment than was used for calculating the initial assessment. The parties filed motions for summary judgment with respect to the issue of whether the defendant had authority to levy the challenged assessment. The trial court denied the plaintiff's motion for summary judgment and granted the defendant's motion, agreeing with the defendant that the creation of the residential units constituted the construction of structures within the meaning of § 7-249, thereby authorizing it to levy a supplemental assessment. After a trial to the court, however, the court rendered judgment for the plaintiff, concluding that the defendant's calculation of the supplemental assessment violated § 7-249 because the defendant did not use the street frontage method in calculating the supplemental assessment, which was the method used to calculate the initial assessment. The court ordered the defendant to recalculate the assessment in accordance with the foregoing method and to return the amount paid by the plaintiff if the property's street frontage remained unchanged since the initial assessment or, if the street frontage had changed, to assess accordingly. Thereafter, the defendant appealed, claiming that the trial court incorrectly determined that it was required to use the same method to calculate the amount of the supplemental assessment as the method that had been used to calculate the initial assessment in 1849. The plaintiff cross appealed, claiming that the trial court improperly granted the defendant's motion for summary judgment because the conversion of the building into residential units did not constitute the construction of structures within the meaning of § 7-249. *Held*:

1. The trial court properly granted the defendant's motion for summary judgment, as there was no genuine issue of material fact with respect to the defendant's authority's to levy the supplemental assessment against the plaintiff's property: having reviewed dictionary definitions of the term "structure" and the treatment of that term in prior case law, this court determined that the term "structure," as used in § 7-249, is broader than the term "building," and that the trial court correctly concluded, under the broad definition of "structure," that the interior renovations to the existing building on the plaintiff's property, namely, the creation of 285 residential units, constituted the construction of

777 Residential, LLC *v.* Metropolitan District Commission

structures within the meaning of § 7-249, as new units were constructed on each floor of the existing building with each unit containing a new kitchen, bathroom, bedroom and living area, such that each unit was artificially built up or composed of parts joined together to create separate residences inside the existing building; moreover, there was no merit to the plaintiff's claim that the broad definition of "structure" should not apply because that term had acquired a peculiar meaning in real property law that was coextensive with the term "building," as the statutes governing real property on which the plaintiff relied did not have a consistent definition of "structure" or consistently define those terms as being coextensive, thereby indicating that the term "structure" had not acquired a peculiar meaning in real property law.

2. The trial court incorrectly determined that § 7-249 required the defendant to use the same method to calculate the supplemental assessment as was used to calculate the initial assessment: the plaintiff could not prevail on its claim that this court's analysis of § 7-249 in *Tower Business Park Associates Number One Ltd. Partnership* v. *Water Pollution Control Authority* (213 Conn. 112) required that the method used to calculate the initial assessment be the same one used for calculating the supplemental assessment, as that case never addressed whether new or expanded buildings or structures could be assessed using a different method of calculation than that used for the initial assessment; moreover, a review of the language of § 7-249 led this court to conclude that § 7-249 must grant water pollution control authorities discretion in deciding the method to apply in assessing supplemental benefits, and that method may be different from the one utilized for the initial assessment, provided that that method would have been authorized under the rules applicable at the time of the initial assessment; furthermore, the plaintiff failed to offer any evidence to indicate that the defendant used a method that would not have been authorized under the rules governing such assessments in 1849, when the initial assessment was levied.

Argued April 29—officially released September 4, 2020**

*Procedural History*

Appeal from a supplemental sewer assessment levied against certain of the plaintiff's real property, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Noble, J.*, granted the defendant's motion for summary judgment and rendered judgment thereon; thereafter, the court granted the plaintiff's motion for reconsideration, vacated the judgment in part and restored the case to the trial docket;

** September 4, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

subsequently, the case was tried to the court, *Budzik, J.*; judgment for the plaintiff, from which the defendant appealed and the plaintiff cross appealed. *Reversed in part*; *further proceedings*.

*John W. Cerreta*, with whom, on the brief, were *Carl R. Nasto*, assistant district counsel, and *William J. Sweeney*, for the appellant-cross appellee (defendant).

*Joseph E. Faughnan*, with whom were *Philip G. Kent* and, on the brief, *Caleb F. Hamel* and *Jason L. Stevenson*, for the appellee-cross appellant (plaintiff).

*Opinion*

D'AURIA, J. In this appeal and cross appeal, we must construe General Statutes § 7-249 to determine whether the defendant, The Metropolitan District Commission, had authority to levy a supplemental sewerage benefit assessment (supplemental assessment) against the property at 777 Main Street, Hartford, owned by the plaintiff, 777 Residential, LLC, and, if so, whether it used a proper methodology in calculating that assessment. Since at least 1849, there has been a property located at 777 Main Street. In 1849, a two-story building used as a bank was at that address. At that time, a new sewerage line was constructed under Main Street, connecting the property to the Hartford sewerage system. As a result of that construction, a predecessor of the defendant levied a sewerage benefit assessment against the owners of this property in the amount of $215, calculated on the basis of the street frontage[1] of the two-story building. The

[1] Testimony at trial established that, to calculate an assessment on the basis of street frontage, the number of feet that the property occupies on the public street is multiplied by a set rate. Evidence admitted at trial showed that, since 1968, the defendant had adopted schedules of flat rate assessments. In 1968, the defendant calculated assessments that were based on flat rates for street frontage, area charge, and acreage. The schedule of flat rate assessments was amended in 1995 and again in 2017. The record, however, does not establish what methods other than street frontage, if any, were authorized or used in 1849, or the flat rates, if any were adopted, for calculating assessments under those methods. Additionally, although the plaintiff offered some evidence that the property occupied the same

336 Conn. 819 JUNE, 2021 823

777 Residential, LLC *v.* Metropolitan District Commission

assessment was paid in a onetime lump sum payment. In 1966, this building was demolished, and a new twenty-six story commercial office building was constructed at 777 Main Street. No supplemental assessment was levied as a result of this construction.

In 2012, the plaintiff purchased the property at 777 Main Street. After receiving the necessary building permits and approvals, the plaintiff converted the property from a commercial office building into a 285 unit residential condominium community. For each residential unit, the plaintiff constructed a kitchen, bathroom, bedroom, and living area, creating 285 separate residences inside the already existing building. In 2015, after construction had begun, the defendant notified the plaintiff that it was levying a supplemental assessment on the property in the amount of $473,330, calculated on the basis of the schedule of flat rates the defendant had adopted in 1995, setting a flat rate of $1655 per residential unit. The defendant arrived at the $473,330 figure by multiplying this flat rate by the number of residential units, which it set at 286 units, rather than 285 units.

After the supplemental assessment was approved following a public hearing, the plaintiff paid the supplemental assessment under protest in a single lump sum and appealed to the Superior Court pursuant to General Statutes § 7-250.[2] In its appeal, the plaintiff challenged the defendant's authority to levy the supplemental assessment on the ground that, after the initial assessment, there had been no "new construction or expansion of

_____

number of feet on the public street in 1849 as it does today, the trial court made no finding in this regard.

[2] General Statutes § 7-250 provides in relevant part: "(a) . . . [A]ny person aggrieved by any assessment may appeal to the superior court for the judicial district wherein the property is located and shall bring any such appeal to a return day of said court not less than twelve nor more than thirty days after service thereof and such appeal shall be privileged in respect to its assignment for trial. . . ."

the buildings or structures on the property,'' as required under § 7-249 for the levying of a supplemental assessment. The plaintiff also claimed that the defendant had improperly used a different method for calculating the assessment than was used for calculating the initial assessment in violation of § 7-249. It is these arguments that the parties present to us on appeal.[3]

The parties filed motions for summary judgment as to the plaintiff's claim regarding the defendant's authority to levy the supplemental assessment, with both parties arguing that there was no genuine issue of material fact as to whether the defendant had authority to levy the supplemental assessment. The plaintiff argued that the defendant had no authority to levy the supplemental assessment because conversion of the property from a commercial space to residential units did not constitute construction or expansion of a building or structure

---

[3] In addition to challenging the defendant's authority to levy the supplemental assessment, the plaintiff claimed in its original appeal to the Superior Court that the supplemental assessment (1) was excessive, as it was calculated on the basis of 286 dwelling units, not 285 dwelling units, and (2) violated the fair and reasonable standard under General Statutes § 7-255, which governs sewerage connection and use charges. Although the plaintiff, in its initial pleading on appeal to the Superior Court, did not challenge the propriety of the method used by the defendant to calculate the supplemental assessment, the plaintiff argued at trial that the supplemental assessment was improper because it was calculated through the use of an incorrect method. Following the close of evidence and closing argument, the plaintiff requested permission to amend its appeal to conform the allegations to the evidence presented at trial. The trial court granted the plaintiff's request over the defendant's objection. The plaintiff then added a new count, claiming that the supplemental assessment "was improperly calculated using the incorrect methodology in violation of the requirements of [§ 7-249]." It is this count on which the trial court rendered judgment in favor of the plaintiff and that is the subject of the defendant's appeal to this court. The trial court found in the defendant's favor on the "fair and reasonable" issue under § 7-255, an issue the plaintiff has not challenged on appeal. Although the trial court found that the proper number of residential units was 285, it determined that it did not need to decide whether the supplemental assessment was excessive because it determined that the defendant used an improper method to calculate the supplemental assessment.

777 Residential, LLC *v.* Metropolitan District Commission

under § 7-249, as the size of the building remained unchanged. The defendant argued to the contrary that it had authority because creation of 285 residential units constituted construction of new "structures," namely, the residential units. Interpreting the term "structures" to have a "wide meaning,"[4] the trial court agreed with the defendant that the creation of the residential units constituted construction of structures, thereby authorizing the defendant to levy a supplemental assessment. Thus, the trial court granted the defendant's motion for summary judgment and denied the plaintiff's motion for summary judgment on this issue.[5] A bench trial was set to determine all remaining claims.

After trial, the trial court concluded that the defendant's supplemental assessment calculation violated § 7-249 because it should have been calculated on the basis of street frontage, as was the initial assessment. The trial court therefore invalidated the assessment and ordered the defendant to recalculate the supplemental assessment using the proper method. The court further ordered that, "[i]f the street frontage associated with 777 Main Street has remained unchanged since the initial assessment, the [defendant] is directed to return the amount paid by [the plaintiff] . . . [and, if] the street frontage . . . has changed since the initial assessment, [the defendant] is directed to make the

[4] Because § 7-249 does not define the term "structure," the trial court looked to both the dictionary definition of the term and this court's prior case law defining the term, concluding that the term "structure" is broadly defined as "[a]ny construction, production, or piece of work artificially built up or composed of parts purposefully joined together . . . ." (Internal quotation marks omitted.)

[5] Subsequent to its rulings on the parties' motions for summary judgment, the trial court granted the plaintiff's motion for reargument or reconsideration and vacated only that portion of its summary judgment ruling as to the amount of the supplemental assessment. The court stated that its ruling as to the amount was based on a misapprehension of fact. The court thus restored the case to the trial docket for a hearing on the issue of whether the assessment was fair and reasonable, as required by General Statutes § 7-255.

777 Residential, LLC *v.* Metropolitan District Commission

appropriate calculation in compliance with this memorandum of decision.''

The defendant appealed to the Appellate Court, claiming that the trial court incorrectly determined that it had to use the same method to calculate the supplemental assessment as had been used to calculate the initial assessment in 1849. The plaintiff cross appealed, claiming that the trial court improperly rendered summary judgment in favor of the defendant on the ground that the defendant had authority to levy the supplemental assessment because the plaintiff argued that conversion of the building into residential units did not constitute construction of structures under § 7-249. The appeal and cross appeal were transferred to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

We agree with the defendant both that the trial court correctly determined that the defendant had authority to levy the supplemental assessment and that the trial court incorrectly determined that it used an improper method in calculating the supplemental assessment. Accordingly, we uphold the trial court's decision to render summary judgment in favor of the defendant and reverse the trial court's judgment regarding the claim of improper methodology. Additional facts will be set forth as required.

I

The claims raised by both parties center on the proper interpretation of § 7-249[6]—whether the creation of the

[6] General Statutes § 7-249 provides in relevant part: ''At any time after a municipality, by its water pollution control authority, has acquired or constructed, a sewerage system or portion thereof, the water pollution control authority may levy benefit assessments upon the lands and buildings in the municipality which, in its judgment, are especially benefited thereby, whether they abut on such sewerage system or not, and upon the owners of such land and buildings, according to such rule as the water pollution control authority adopts, subject to the right of appeal as hereinafter provided. Benefits to buildings or structures constructed or expanded after the initial assessment may be assessed as if the new or expanded buildings or structures had existed at the time of the initial assessment. Such benefits and

777 Residential, LLC *v.* Metropolitan District Commission

residential units constituted construction of "structures," and, if so, what method was required to calculate the supplemental assessment. We are therefore faced with "an issue of statutory construction requiring a conclusion of law. When construing a statute, we adhere to fundamental principles of statutory construction . . . over which our review is plenary." (Citations omitted; footnote omitted.) *Forest Walk, LLC* v. *Water Pollution Control Authority*, 291 Conn. 271, 281, 968 A.2d 345 (2009).

In construing § 7-249, our analysis is guided by General Statutes § 1-2z, the plain meaning rule, which requires that we "first . . . consider the text of the

benefits to anticipated development of land zoned for other than business, commercial or industrial purposes or land classified as farm land, forest land or open space land on the last completed grand list of the municipality in which such land is located, pursuant to the provisions of sections 12-107a to 12-107e, inclusive, shall not be assessed until such construction or expansion or development is approved or occurs. . . . The sum of initial and subsequent assessments shall not exceed the special benefit accruing to the property. Such assessment may include a proportionate share of the cost of any part of the sewerage system, including the cost of preliminary studies and surveys, detailed working plans and specifications, acquiring necessary land or property or any interest therein, damage awards, construction costs, interest charges during construction, legal and other fees, or any other expense incidental to the completion of the work. The water pollution control authority may divide the total territory to be benefited by a sewerage system into districts and may levy assessments against the property benefited in each district separately. In assessing benefits against property in any district the water pollution control authority may add to the cost of the part of the sewerage system located in the district a proportionate share of the cost of any part of the sewerage system located outside the district but deemed by the water pollution control authority to be necessary or desirable for the operation of the part of the system within the district. In assessing benefits and apportioning the amount to be raised thereby among the properties benefited, the water pollution control authority may give consideration to the area, frontage, grand list valuation and to present or permitted use or classification of benefited properties and to any other relevant factors. . . . Revenue from the assessment of benefits shall be used solely for the acquisition or construction of the sewerage system providing such benefits or for the payment of principal of and interest on bonds or notes issued to finance such acquisition or construction. No assessment shall be made against any property in excess of the special benefit to accrue to such property. . . ."

777 Residential, LLC *v.* Metropolitan District Commission

statute itself and its relationship to the broader statutory scheme. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation.'' (Citation omitted; internal quotation marks omitted.) *State* v. *Dudley*, 332 Conn. 639, 645, 212 A.3d 1268 (2019).

In determining whether statutory language contains ambiguity, ''we must carefully examine the entire text of the statute. . . . [I]t is a basic tenet of statutory construction that [w]e construe a statute as a whole and read its subsections concurrently in order to reach a reasonable overall interpretation . . . .'' (Citation omitted; internal quotation marks omitted.) Id., 647. ''[T]he legislature is always presumed to have created a harmonious and consistent body of law . . . .'' (Internal quotation marks omitted.) *Stone-Krete Construction, Inc.* v. *Eder*, 280 Conn. 672, 678, 911 A.2d 300 (2006).[7]

''Although we generally begin with the text of the statute, we note that we are not writing on a clean slate . . . .'' *Stiffler* v. *Continental Ins. Co.*, 288 Conn. 38, 43, 950 A.2d 1270 (2008). Although this court has not addressed either of the claims raised by the parties, we

[7] The plaintiff argues that, to the extent § 7-249 is ambiguous, the statute should be strictly construed in its favor because a supplemental assessment is a tax. See, e.g., *Consolidated Diesel Electric Corp.* v. *Stamford*, 156 Conn. 33, 36, 238 A.2d 410 (1968) (''[w]hen a taxing statute is being considered, ambiguities are resolved in favor of the taxpayer''). In light of our determination, however, that the statute, when read as a whole, is plain and unambiguous, we do not need to address whether this canon of interpretation applies in this circumstance. See, e.g., *Key Air, Inc.* v. *Commissioner of Revenue Services*, 294 Conn. 225, 241, 983 A.2d 1 (2009) (presumption of strict construction in favor of taxpayer does not apply when statute is not ambiguous).

777 Residential, LLC *v.* Metropolitan District Commission

have construed § 7-249 for other purposes, which we briefly review prior to addressing the parties' claims.

The defendant "is a municipal corporation created in 1929 by a special act of the General Assembly. 20 Spec. Acts 1204, No. 511 [1929]. It was given broad powers relating to sewage disposal, water supply and regional planning as well as powers limited to certain highways." *Rocky Hill Convalescent Hospital, Inc.* v. *Metropolitan District*, 160 Conn. 446, 450, 280 A.2d 344 (1971). The defendant has been designated the water pollution control authority for the metropolitan district, which includes "eight member and five nonmember towns in the greater Hartford area . . . ." *Glastonbury* v. *Metropolitan District Commission*, 328 Conn. 326, 327, 179 A.3d 201 (2018); see General Statutes § 7-246. The defendant's authority is limited to "those powers that have been expressly granted to it by the state or that are necessary for it to discharge its duties and to carry out its objects and purposes." (Internal quotation marks omitted.) *Wright* v. *Woodridge Lake Sewer District*, 218 Conn. 144, 148, 588 A.2d 176 (1991).

Section 7-249 authorizes the defendant, like any other water pollution control authority, to levy special benefit assessments—including supplemental assessments—against the property benefited by the sewerage system. "The benefit to a property owner is measured solely according to the amount by which the improvement causes the property to increase in market value. . . . Under § 7-249, [t]he monetary value of the special benefit conferred upon a piece of property by the presence of a sewerage system must be calculated by the difference between the market value of the realty with and without the sewerage system . . . ." (Citations omitted; internal quotation marks omitted.) *Shoreline Care Ltd. Part-*

777 Residential, LLC *v.* Metropolitan District Commission

*nership* v. *North Branford*, 231 Conn. 344, 351, 650 A.2d 142 (1994).[8]

II

The plaintiff claims that the trial court incorrectly concluded that the defendant had authority to levy the supplemental assessment because creation of the residential units did not constitute construction of structures under § 7-249. It argues that, although the term "structure" may have a broad definition in other areas of the law, it has acquired a particular meaning within the context of property law, which the trial court and the defendant ignored. Specifically, the plaintiff submits that the term "structure" is equivalent to the term "building" under this state's property laws and should be so defined under § 7-249. We disagree.

"The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . ." (Internal quotation marks omitted.) *Liberty Mutual Ins. Co.* v. *Lone Star Industries, Inc.*, 290 Conn. 767, 787, 967 A.2d 1 (2009). Our review of a trial court's decision to grant a motion for summary judgment is plenary. See, e.g., *Grimm* v. *Fox*, 303 Conn. 322, 329, 33

---

[8] Although a special benefit assessment is not at issue in the present case, we note that, when a property owner appeals a special benefit assessment, "there is a presumption as to the regularity, validity and correctness of a special benefit assessment that imposes the burden of proof on the property owner challenging the assessment." *Shoreline Care Ltd. Partnership* v. *North Branford*, supra, 231 Conn. 350. "[T]o overcome the presumption of validity of the benefit assessment, a property owner must introduce competent evidence that the assessment is greater than the increase in market value to the property caused by the improvement." Id., 353. When the special benefit assessment is supplemental, "[t]he sum of initial and subsequent assessments shall not exceed the special benefit accruing to the property." (Internal quotation marks omitted.) *Tower Business Park Associates Number One Ltd. Partnership* v. *Water Pollution Control Authority*, 213 Conn. 112, 117, 566 A.2d 696 (1989).

777 Residential, LLC *v.* Metropolitan District Commission

A.3d 205 (2012). More particularly, in the present case, because the plaintiff's claim that the trial court erroneously rendered summary judgment in favor of the defendant distills to an issue of statutory interpretation—whether the alterations to the property constituted construction of "structures" under § 7-249—our review is limited to that legal conclusion. See, e.g., *Mortgage Electronic Registration Systems, Inc.* v. *White*, 278 Conn. 219, 226, 896 A.2d 797 (2006).

Section 7-249 authorizes a water pollution control authority to levy a supplemental assessment for benefits to "buildings or structures constructed or expanded" after the initial assessment. See *Tower Business Park Associates Number One Ltd. Partnership* v. *Water Pollution Control Authority*, 213 Conn. 112, 121, 566 A.2d 696 (1989) (*Tower Business*). The parties agree that the interior renovations to the property at issue—the creation of 285 residential units—did not constitute construction or expansion of the building and did not constitute expansion of the existing structures. The issue is whether these renovations constituted construction of "structures."

The term "structures" is not defined in § 7-249, and this court never has interpreted this term in the context of § 7-249. When a statute does not define a term, "General Statutes § 1-1 (a) directs that we construe the term according to its commonly approved usage, mindful of any peculiar or technical meaning it may have assumed in the law. We may find evidence of such usage, and technical meaning, in dictionary definitions, as well as by reading the statutory language within the context of the broader legislative scheme." *State* v. *Menditto*, 315 Conn. 861, 866, 110 A.3d 410 (2015). Additionally, we may look to prior case law defining the term at issue. See *Nationwide Mutual Ins. Co.* v. *Pasiak*, 327 Conn. 225, 246, 173 A.3d 888 (2017) (looking to case law to construe phrase "arising out of" to determine whether

777 Residential, LLC *v.* Metropolitan District Commission

insurer was obligated to indemnify business owner for tortious conduct committed against employee); *Standard Oil of Connecticut, Inc.* v. *Administrator, Unemployment Compensation Act*, 320 Conn. 611, 635–36, 134 A.3d 581 (2016) (looking to case law when construing "invoice" in context of payments to contractors).

Black's Law Dictionary defines the term "structure" as "[a]ny construction, production, or piece of work artificially built up or composed of parts purposefully joined together . . . ." Black's Law Dictionary (11th Ed. 2019) p. 1721. This definition is consistent with the definition of this term contained in dictionaries at and near the time that § 7-249 was amended in 1973 to include the phrase "building or structures."[9] See Black's Law Dictionary (4th Ed. 1968) p. 1592 ("[a]ny construction, or any production or piece of work artificially built up or composed of parts joined together in some definite manner"); The American College Dictionary (1962) ("anything composed of parts arranged together in some way"); see Black's Law Dictionary (5th Ed. 1979) p. 1276 ("Any construction, or any production or piece of work artificially built up or composed of parts joined together in some definite manner. That which is built or constructed; an edifice or building of any kind. A combination of materials to form a construction for occupancy, use or ornamentation whether installed on, above, or below the surface of a parcel of land."); see also *Andrew B. Hendryx Co.* v. *New Haven*, 104 Conn.

___

[9] In 1971, § 7-249 was amended to include the portion of the statute at issue, although with some variations: "Benefits to *buildings constructed or expanded* after the initial assessment may be assessed *as if the new or expanded structures* had existed at the time of the initial assessment." (Emphasis added.) Public Acts 1971, No. 699. In 1973, this portion of the statute was amended to read as it does today: "Benefits to *buildings or structures* constructed or expanded after the initial assessment may be assessed as if the new or expanded *buildings or structures* had existed at the time of the initial assessment." (Emphasis added.) Public Acts 1973, No. 73-523, § 1.

777 Residential, LLC *v.* Metropolitan District Commission

632, 639–40, 134 A. 77 (1926) (noting that dictionaries in 1920s defined "structure" as " 'something constructed or built, as a building, a dam, a bridge' " or " 'any production or piece of work artificially built up, or composed of parts and joined together in some definite manner' "); cf. *State* v. *Menditto*, supra, 315 Conn. 866 ("dictionaries in print at [the] time [of enactment] are especially instructive").

Our appellate courts consistently have applied this dictionary definition in other contexts, such as zoning, insurance coverage, and criminal cases, and, in doing so, explained that this definition encompasses, but is not confined to, buildings. See *Andrew B. Hendryx Co.* v. *New Haven*, supra, 104 Conn. 640 (defining "structure," in context of assessment for taxation, as "not confined to an independent building but . . . to include anything which is built or constructed, an edifice or building of any kind, any piece of work artificially built up or composed of parts joined together in some definite manner"); see also *Alderman* v. *Hanover Ins. Group*, 169 Conn. 603, 608–609, 363 A.2d 1102 (1975) (defining "structure" for insurance coverage purposes to include buildings, certain freestanding constructions, and "devices which are not in any strict sense independent buildings" but not pieces of equipment (internal quotation marks omitted)); *State* v. *Perez*, 78 Conn. App. 610, 644–45, 828 A.2d 626 (2003) (defining "structure" for purposes of burglary statute consistent with definition in sixth edition of Black's Law Dictionary), cert. denied, 271 Conn. 901, 859 A.2d 565 (2004).

In contrast, the term "building" has been defined more narrowly as "a fabric or edifice, framed or constructed, designed to stand more or less permanently, and covering a space of land, for use as a dwelling, storehouse, factory, shelter for beasts, or some other useful purpose." (Internal quotation marks omitted.) *Katsoff* v. *Lucertini*, 141 Conn. 74, 77, 103 A.2d 812 (1954); see

also *Tine* v. *Zoning Board of Appeals*, 308 Conn. 300, 307, 63 A.3d 910 (2013) (defining "building" as "a constructed edifice designed to stand more or less permanently, covering a space of land, [usually] covered by a roof and more or less completely enclosed by walls . . . distinguished from structures not designed for occupancy" (internal quotation marks omitted)); *State* v. *Ruocco*, 151 Conn. App. 732, 753, 95 A.3d 573 (2014) ("[a] structure with walls and a roof, esp[ecially] a permanent structure"), aff'd, 322 Conn. 796, 144 A.3d 354 (2016). As this court has explained, "while a building is always a structure, all structures are not buildings." *Katsoff* v. *Lucertini*, supra, 78; *Andrew B. Hendryx Co*. v. *New Haven*, supra, 104 Conn. 640 (same). Thus, this court has recognized that, on the basis of its dictionary definition, the term "structure" is broader than the term "building."

The trial court, under this broad definition of "structure," correctly concluded that the interior renovations to the property in the present case—the creation of 285 residential units—constituted construction of structures under § 7-249. There is no genuine issue of material fact that creation of the residential units was "construction, production, or piece[s] of work artificially built up or composed of parts purposefully joined together . . . ." Black's Law Dictionary (11th Ed. 2019) p. 1721. The exhibits attached to the plaintiff's appeal to the Superior Court, upon which the defendant relied in support of its motion for summary judgment, showed that new units were constructed on each floor of the building, with each unit containing a new kitchen, bathroom, bedroom, and living area so that each unit was "artificially built up or composed of parts joined together" to create separate residences inside the already existing building. *Andrew B. Hendryx Co*. v. *New Haven*, supra, 104 Conn. 640.

777 Residential, LLC *v.* Metropolitan District Commission

Notably, the plaintiff does not argue that, if this dictionary definition applies, there is a genuine issue of fact regarding whether the construction of the residential units constitutes construction of structures. Rather, the plaintiff contends that this broad definition should not apply at all because dictionary definitions are not applicable when a term is accorded a peculiar meaning under the law and "where the context indicates that a different meaning was intended."[10] (Internal quotation marks omitted.) The plaintiff asserts that the term "structure" has acquired a peculiar meaning in real property law that trumps the common dictionary definition and that real property law and benefit assessments are intertwined so that the definition of "structure" under real property law must govern benefit assessments. The plaintiff asserts that the term "structure" is defined under real property statutes to be "somewhat coextensive" with the term "building" and, thus, is limited to "those things that are built upon the vacant land, such as buildings, landmarks, historical sites or other historic structures."

_____

[10] The plaintiff also looks to the legislative history of § 7-249 to show that "context indicate[d] that a different meaning was intended." The plaintiff relies on a single statement that the purpose of the 1973 amendment; see footnote 9 of this opinion; was to "clarify the definition of a building in this act," which, it argues, proves that the legislature intended the terms "building" and "structure" to be coextensive. 16 H.R. Proc., Pt. 11, 1973 Sess., p. 5401, remarks of Representative Morton J. Blumenthal. Section 1-2z, however, prohibits this court from looking to legislative history in the absence of a finding of ambiguity in a statute. See, e.g., *Stone-Krete Construction, Inc.* v. *Eder*, supra, 280 Conn. 677–78 (court may not consider legislative history in construing statute unless it first establishes that statute is ambiguous). Nevertheless, we note that the legislative history does not support the plaintiff's interpretation of the statute. Although this statement shows that the amendment was attempting to clarify the term "buildings," it does not shed light on whether these two terms should be defined synonymously. Rather, the fact that the two terms appeared to originally be used interchangeably in No. 699 of the 1971 Public Acts, after which this language was amended in No. 73-523, § 1, of the 1973 Public Acts, shows an intent for these two terms to be separate and distinct. See footnote 9 of this opinion.

777 Residential, LLC *v.* Metropolitan District Commission

It is true that, if a term acquires a unique meaning within the confines of a certain statutory scheme, that definition will control over the general dictionary definition or a definition found in case law involving other unrelated statutes. See, e.g., *State* v. *Vickers*, 260 Conn. 219, 224, 796 A.2d 502 (2002) ("[w]ords in a statute must be given their plain and ordinary meaning . . . unless the context indicates that a different meaning was intended" (internal quotation marks omitted)); see also *Dattco, Inc.* v. *Commissioner of Transportation*, 324 Conn. 39, 48, 151 A.3d 823 (2016) ("[i]n addition to considering the dictionary definition of the term [at issue] we must consider its meaning also in the context that it is used in the provision at issue and in related provisions").

Even if we assume that the definition of "structure" under real property law governs benefit assessments, the plaintiff is wrong that the statutes governing real property require limiting the definition of the term "structure" so that it is coextensive with the term "building" in all statutes that involve real property. In fact, the statutes the plaintiff cites do not explicitly define "structure" as coextensive with "building." Rather, the statutes either provide no definition at all or merely provide that a building is a certain kind of structure, or that a structure includes buildings, which is consistent with the recognized principle that, while all buildings are structures, not all structures are buildings. See General Statutes § 47-18a (using term "structure" in regulating "any historic structure or landmark" without defining this term); General Statutes § 47-35 ("[t]obacco poles used in any structure utilized for the curing of tobacco in the leaf shall be deemed for all purposes an integral part of such structure"); General Statutes § 47-42a (b) (using phrase "historically significant structures or sites" without any definition); General Statutes § 47-68a (p) ("'[b]uilding' means a structure or structures

777 Residential, LLC *v.* Metropolitan District Commission

containing one or more units and comprising a part of the property''); General Statutes § 47-202 (28) (defining "real property'' as "any leasehold or other estate or interest in, over, or under land, including structures, fixtures, and other improvements'').

General Statutes § 47-300 (1) is the only statute the plaintiff cites requiring that the term "structure'' be limited to structures used as a residence, which shows that this limitation of the term "structure'' is unique to this statute and is not generally applicable to all statutes involving real property. See General Statutes § 47-300 (1) (defining "[e]ligible housing'' as "any building, structure or portion thereof which is used or occupied, or intended, arranged or designed to be used or occupied, as the home, residence or sleeping place of one or more persons or families of very low income, low income or moderate income''). This also shows that the legislature knew how to limit the definition of the term "structure'' but chose not to do so in the context of § 7-249.

Even if some statutes relating to real property treat the terms "building'' and "structure'' synonymously, other real property statutes list them as separate and distinct terms. See General Statutes § 4b-133 (a) (regarding security audits for "any building or structure''); General Statutes § 4b-135 (security requirements for leasing of "any building or structure''). The fact that statutes governing real property do not have a consistent definition of "structure'' shows that this term has not acquired a unique meaning in real property law.

To the extent that the statutes cited by the plaintiff treat the terms "building'' and "structure'' equivalently, these statutes are distinguishable. None of these statutes uses the disjunctive, "or,'' as used in § 7-249. When a statute has used the phrase, "building or structure,'' this court has interpreted the term "structure'' as broader than "building.'' See *Andrew B. Hendryx Co.*

777 Residential, LLC *v.* Metropolitan District Commission

v. *New Haven*, supra, 104 Conn. 642 (disjunctive reference to "building or structure" in provision at issue signaled intent to reach both independent buildings affixed to land and other structures artificially built up). This court has explained that "[o]ther provisions in our statutes demonstrate that the legislature is aware that there is a difference between a building and other types of structures, and that it knows how to make specific reference to all structures [for broader applicability or to just buildings for more narrow applicability] when it intends to do so." *Tine* v. *Zoning Board of Appeals*, supra, 308 Conn. 307; see id., 307–308 (listing statutes in which both terms, "structure" and "building" are used, showing intent that these terms are to have separate meanings). When the legislature has intended to limit a statute's applicability to buildings, and not to the broader category of structures, the legislature has done so by using only the term "building." Id., 308 (explaining that statutes show that legislature knows how to extend applicability to all structures and use of only term "building" shows intent for narrower applicability).

The plaintiff counters that the term "or" may be construed in the conjunctive, not the disjunctive. Ordinarily, "[t]he use of the disjunctive 'or' between the two parts of the statute indicates a clear legislative intent of separability." *State* v. *Dennis*, 150 Conn. 245, 248, 188 A.2d 65 (1963). Nevertheless, the plaintiff is correct that "[t]he disjunctive 'or' can be construed as 'and' where such construction clearly appears to have been the legislative intent." *D'Occhio* v. *Connecticut Real Estate Commission*, 189 Conn. 162, 170, 455 A.2d 833 (1983). The present case, however, is distinguishable from cases in which we have interpreted "or" to mean "and," because, in those cases, the words separated by the term "or" in the statute at issue were defined synonymously, which clearly is not the case here. See *State* v. *Allen*, 216 Conn. 367, 380, 579 A.2d 1066 (1990)

777 Residential, LLC *v.* Metropolitan District Commission

(clear intent for term "or" in phrase, "licensed or privileged," in certain criminal statutes is to be construed in conjunctive due to definition of term "licensed" as "a personal, revocable, and unassignable privilege" (emphasis omitted; internal quotation marks omitted)).

Finally, the plaintiff counters that, if construction of structures includes interior improvements, renovations, or remodeling, like the creation of residential units, a supplemental assessment could be levied for any improvement made to a property, which would improperly expand the scope of the statute. We disagree.

As explained previously, § 7-249 prohibits the total amount of the assessments—including both the initial and any supplemental assessments—from exceeding the value of the benefit to the property from accessing the sewerage system. See *Tower Business*, supra, 213 Conn. 117 ("[t]he sum of initial and subsequent assessments shall not exceed the special benefit accruing to the property" (internal quotation marks omitted)). A supplemental assessment is limited to the value of the "[*b*]*enefits* to buildings or structures constructed or expanded after the initial assessment . . . ." (Emphasis added.) General Statutes § 7-249; *Tower Business*, supra, 121. Thus, the new or expanded building or structures must increase the benefit to the property before the defendant can levy a supplemental assessment. If the altered property receives the same benefit from accessing the sewerage system as did the initial property, then § 7-249 prohibits a supplemental assessment because the benefit already has been paid for through the initial assessment, and any additional assessment would cause the total amount of the assessments to exceed the benefit accruing to the property. Not all interior improvements and renovations will increase the "benefit" the property receives from the sewerage system. As a result, not all interior improvements made to a property will justify a supplemental assessment,

and, thus, our definition of the term ''structure'' does not impermissibly expand the scope of § 7-249.

Therefore, the trial court correctly interpreted the term ''structures'' in § 7-249 to include any ''construction, production, or piece of work artificially built up or composed of parts purposefully joined together . . . .'' Black's Law Dictionary (11th Ed. 2019) p. 1721. Accordingly, we conclude that the trial court properly granted the defendant's motion for summary judgment because there was no genuine issue of material fact that the defendant had authority to levy the supplemental assessment on the ground that the creation of the 285 residential units constituted construction of structures under this statute, properly construed.

III

Having determined, with respect to the plaintiff's cross appeal, that the defendant had authority to levy the supplemental assessment, we turn to the defendant's challenge on appeal to the trial court's determination that the defendant incorrectly calculated the supplemental assessment by failing to use the same method as was used for the initial assessment because the benefit to new structures may only be ''assessed as if the new . . . structures had existed at the time of the initial assessment''; General Statutes § 7-249; if the same method was used. The defendant argues that § 7-249 clearly and unambiguously provides it with discretion to determine the proper method to apply in calculating both initial and supplemental assessments. We agree with the defendant.

The following additional facts and procedural history are necessary to our review of this claim. At trial, the plaintiff offered the testimony of Allen King, a real estate administrator employed by the defendant, who testified that, in 1849, the property at 777 Main Street was assessed by the predecessor to the defendant, which did not exist in 1849, using the street frontage method, although King

777 Residential, LLC *v.* Metropolitan District Commission

did not know why this method was used and was uncertain as to whether the taxing authority at the time used or permitted the use of any other method besides street frontage or lateral charge. King explained that a lateral charge is the fee that the defendant assesses when it brings the street line to the sewer line after the building owner has brought a sewer line from its building to the street line. King further testified that the supplemental assessment was levied in 2015 because the use of the building had changed from commercial to residential. He testified that the supplemental assessment was calculated using the schedule of flat rates the defendant adopted in 1995. This schedule considers three components: the frontage charge, the lateral charge, and the area charge, with the area charge broken into three additional categories—acreage, number of dwelling units, and number of rooms. Only certain categories apply to certain kinds of buildings. For example, the number of dwelling units is only a factor in determining the amount of the assessment for single unit and multiunit dwellings; the number of rooms is only a factor in determining the amount of the assessment for hospitals, hotels, motels, and convalescent homes; and acreage is only a factor in determining the amount of the assessment for commercial buildings, schools, and churches.

King also testified that the defendant had incurred no costs from the plaintiff's conversion of the property into residential units. There had, however, been systemwide upgrades, changes, and improvements to the Hartford sewerage system, although he was unaware of any new construction to the Main Street sewerage line connecting the property to the Hartford sewerage system since 1849.

The plaintiff offered no evidence regarding the market value of the property, originally or as altered, from any time period. Nor did the plaintiff offer any evidence, expert or otherwise, showing that the amount of the

777 Residential, LLC *v.* Metropolitan District Commission

supplemental assessment exceeded the benefit to the property from accessing the sewerage system.

The defendant presented the testimony of Richard Michaud, a real estate appraiser, who valued the property as altered at $53 million. Michaud testified that, without access to the sewerage system, the property could not function as a residential building, so it would be worthless. Additionally, he testified that the use of any other type of system, such as a septic system or a storage tank system, was more expensive than the price of the assessment.

In its decision, the trial court determined that it did not need to decide whether the supplemental assessment was excessive[11] because it concluded that the defendant had incorrectly calculated the supplemental assessment, which should have been calculated on the basis of street frontage, as was the 1849 assessment. The crux of the trial court's decision regarding methodology was that, if § 7-249 required improvements or alterations to properties to be "assessed as if the new . . . structures had existed at the time of the initial assessment," the only way to do so would be to use the same method that was used during the initial assessment. The trial court relied on this court's decision in *Tower Business*, supra, 213 Conn. 112, in support of its rationale. Specifically, the trial court reasoned that, in *Tower Business*, this court characterized the use of the same method in calculating both the initial and supplemental assessments as the "prescribed method for calculating the amount of a special assessment . . . ." Id., 118. The trial court explained that, given that the frontal

[11] Nevertheless, as to the plaintiff's claim that the supplemental assessment was excessive because it was based on 286 residential units, not 285, the trial court found that the proper number of residential units was 285. Additionally, the trial court found that the plaintiff failed to offer any evidence establishing that the sum of the initial and supplemental assessments exceeded the benefit to the property.

footage *may not* have changed since 1849—an issue on which it made no finding—its decision was not unreasonable or absurd, even if it prevented the defendant from levying a supplemental assessment at all because there was no evidence that, since 1849, there had been any improvements to the sewerage line connecting the property at 777 Main Street to the sewerage system, and, thus, there were no costs for the defendant to recoup through the supplemental assessment. Although there was evidence that the defendant had made improvements to the Hartford sewerage system generally, the trial court determined that there was no evidence of how these improvements affected or benefited the subject property.

To resolve this claim, we begin with the text of § 7-249 and apply the principles of statutory construction that we previously discussed. See footnote 7 of this opinion and accompanying text. The parties dispute whether the statute's second sentence, governing supplemental assessments, regulates the method to be used in calculating supplemental assessments: "Benefits to buildings or structures constructed or expanded after the initial assessment may be assessed as if the new or expanded buildings or structures had existed at the time of the initial assessment." General Statutes § 7-249. This language does not explicitly refer to any particular method for arriving at such an assessment.

Nevertheless, the plaintiff argues that, in *Tower Business*, this court construed this language to require use of the same method in calculating both the initial and supplemental assessment. See *Tower Business*, supra, 213 Conn. 116. In *Tower Business*, a one-story factory building initially had been assessed in 1974 using the grand list valuation method. Id. Subsequently, in the 1980s, the plaintiff converted this one-story factory building into a two-story commercial office building. Id. As a result of the renovations, the defendant levied

a supplemental assessment that was calculated by using the same grand list valuation method that was in effect in 1974. Id.

The plaintiff in *Tower Business* appealed the supplemental assessment, claiming that it was excessive because the volume of sewage generated by the two-story office building was less than when the former one-story factory building was in operation. Id., 118–19. In determining whether the supplemental assessment was excessive, this court examined the same second sentence of the statute at issue in the present case and explained: "The evident purpose of this provision of § 7-249 is to allow a municipality to impose a supplemental assessment for new or improved buildings in an amount that, together with the initial assessment, will equal the assessment that would have been made *if these improvements had existed at the time of the initial assessment.* In order to defeat the supplemental assessment that has been imposed on its property, therefore, the plaintiff must prove that, together with the initial assessment, it exceeds *the benefit that access to the sewers would have conferred upon the property as a whole at the time of the initial assessment if the present office building had then been erected* [with the benefit being] . . . calculated by the difference between the market value of the realty with and without the sewerage system . . . ." (Emphasis added; internal quotation marks omitted.) Id., 118.

In evaluating the plaintiff's claim in *Tower Business*, this court noted that "[t]he plaintiff [did] not claim that *this prescribed method* for calculating the amount of a special assessment [had] not been followed by the defendant." (Emphasis added.) Id. Rather, the plaintiff's claim in *Tower Business* was premised on the argument that a supplemental assessment may not be imposed if there is no evidence that the changes to the property

777 Residential, LLC *v.* Metropolitan District Commission

will cause additional use of the sewerage system. Id., 119–20. This court rejected that argument. Id.

The plaintiff in the present case, however, makes an altogether different argument than the argument raised in *Tower Business*. As stated, *Tower Business* involved whether sewerage use factored into whether a supplemental assessment was proper, not whether the defendant had to use the same method to calculate both the initial and supplemental assessments. Nonetheless, the plaintiff in the present case argues that, although methodology was not at issue in *Tower Business*, this court's analysis of § 7-249 in *Tower Business* requires the same method to be used for the supplemental assessment as was used for the initial assessment because that practice occurred in *Tower Business* and we described it as the "prescribed method for calculating the amount of a special assessment . . . ." Id., 118.

Contrary to the plaintiff's contention, however, this court did not characterize the use of the same method for calculating the initial and supplemental assessments as the "prescribed method" but, rather, the phrase, "this prescribed method for calculating the amount of a special assessment," referred to the court's statement that § 7-249 requires the defendant to value the altered property as if it existed at the time of the initial assessment. Specifically, this court was referring to its determination that supplemental assessments of "new or improved buildings [or structures] [cannot exceed] an amount that, together with the initial assessment, will equal the assessment that would have been made if these improvements had existed at the time of the initial assessment." Id. The "method" that *Tower Business* referred to is the method for calculating the date of valuation, not the factors the defendant considers in calculating the assessments, such as street frontage, acreage, lateral charge, grand list valuation, and use. The defendant in *Tower Business* assessed the expan-

sion of the building as if the expanded building had existed in 1974; id., 116; in conformance with this "prescribed method" regarding the date of valuation. There is no reference, however, in *Tower Business* about whether the defendant must consider the same factors in calculating the initial and supplemental assessments. Because this issue was not raised in *Tower Business*, the court never addressed whether new or expanded buildings or structures could be assessed using a different method, as if they existed at the time of the initial assessment.[12]

Therefore, we are not convinced that our decision in *Tower Business* compels a conclusion that the second sentence of § 7-249 requires that a certain method apply to supplemental assessments. In the absence of any controlling interpretation of the second sentence of the statute, we turn back to the language of the statute, examined as a whole, to determine whether it clearly and unambiguously addresses the proper method that a water pollution control authority must employ in calculating a supplemental assessment. See, e.g., *Vibert* v. *Board of Education*, 260 Conn. 167, 176, 793 A.2d 1076 (2002). Because § 7-249 is a lengthy statute (fourteen sentences) packed with content, an examination of the statute sentence by sentence is both unavoidable and useful.

---

[12] We note that, although the plaintiff relies on this language in support of its argument that the defendant was required to use the same method as was used at the time of the initial assessment, the plaintiff never has raised a claim that the supplemental assessment was invalid because it was not assessed as if the altered property existed in 1849. The defendant assessed the altered property using the flat rate schedule adopted in 1995. The only testimony as to the proper date of valuation was testimony from Patrick J. Wellspeak, a commercial real estate appraiser and consultant, that valuation of the altered property as if it existed in 1849 was nearly impossible because high-rise condominium complexes did not exist in 1849. Nevertheless, we note that not only was this claim not raised, but also that it is the plaintiff's burden to show that the amount of the combined initial and supplemental assessments exceeds the benefit to the altered property as if it existed in 1849.

777 Residential, LLC *v.* Metropolitan District Commission

The statute begins with a general grant of power to water pollution control authorities to levy assessments, so long as the property is benefited by the sewerage system and the assessment conforms to the rules adopted by the water pollution control authority.[13] The statute then specifies certain circumstances in which the water pollution control authority may levy specific kinds of assessments, such as supplemental assessments,[14] as is principally at issue in the present case, and deferred assessments for land not yet developed.[15]

After explaining the different types of assessments, § 7-249 sets forth a limitation on the total amount of the assessment levied on a property, including "[t]he

[13] The first sentence of § 7-249 provides: "At any time after a municipality, by its water pollution control authority, has acquired or constructed, a sewerage system or portion thereof, the water pollution control authority may levy benefit assessments upon the lands and buildings in the municipality which, in its judgment, are especially benefited thereby, whether they abut on such sewerage system or not, and upon the owners of such land and buildings, according to such rule as the water pollution control authority adopts, subject to the right of appeal as hereinafter provided."

[14] The second sentence of § 7-249 provides: "Benefits to buildings or structures constructed or expanded after the initial assessment may be assessed as if the new or expanded buildings or structures had existed at the time of the initial assessment."

[15] The third, fourth and fifth sentences of § 7-249 provide: "Such benefits and benefits to anticipated development of land zoned for other than business, commercial or industrial purposes or land classified as farm land, forest land or open space land on the last completed grand list of the municipality in which such land is located, pursuant to the provisions of sections 12-107a to 12-107e, inclusive, shall not be assessed until such construction or expansion or development is approved or occurs. In case of a property so zoned or classified which exceeds by more than one hundred per cent the size of the smallest lot permitted in the lowest density residential zone allowed under zoning regulations or, in the case of a town having no zoning regulations, a lot size of one acre in area and one hundred fifty feet in frontage, assessment of such excess land shall be deferred until such time as such excess land shall be built upon or a building permit issued therefor or until approval of a subdivision plan of such excess property by the planning commission having jurisdiction, whichever event occurs first at which time assessment may be made as provided herein. No lien securing payment shall be filed until the property is assessed."

sum of initial and subsequent assessments . . . .''[16] The
next three sentences of the statute then set forth costs
that may be considered in determining the amount of
the assessment, stating that ''[s]uch assessment''—
referring to the use of the phrase, ''sum of initial and
subsequent assessments,'' in the previous sentence—
may include a variety of costs, such as ''a proportionate
share of the cost of any part of the sewerage system
. . . .''[17] The plain and unambiguous language of the
statute therefore makes clear that, in these three senten-
ces of the statute regarding costs to be considered in
determining the amount of the assessments, the phrase
''[s]uch assessment'' includes all of the types of assess-
ments previously set forth, including the initial assess-
ments, any supplemental assessment, and any deferred
assessment.

Only after these three sentences does § 7-249 estab-
lish the required method for calculating assessments.
The statute's tenth sentence provides: ''In assessing
benefits and apportioning the amount to be raised
thereby among the properties benefited, the water pol-
lution control authority may give consideration to the
area, frontage, grand list valuation and to present or

[16] The sixth sentence of § 7-249 provides: ''The sum of initial and subse-
quent assessments shall not exceed the special benefit accruing to the prop-
erty.''

[17] The seventh, eighth, and ninth sentences of § 7-249 provide: ''Such
assessment may include a proportionate share of the cost of any part of
the sewerage system, including the cost of preliminary studies and surveys,
detailed working plans and specifications, acquiring necessary land or prop-
erty or any interest therein, damage awards, construction costs, interest
charges during construction, legal and other fees, or any other expense
incidental to the completion of the work. The water pollution control author-
ity may divide the total territory to be benefited by a sewerage system into
districts and may levy assessments against the property benefited in each
district separately. In assessing benefits against property in any district the
water pollution control authority may add to the cost of the part of the
sewerage system located in the district a proportionate share of the cost
of any part of the sewerage system located outside the district but deemed
by the water pollution control authority to be necessary or desirable for
the operation of the part of the system within the district.''

permitted use or classification of benefited properties and to any other relevant factors.'' We have described this portion of the statute as ''broad,'' granting water pollution control authorities discretion to determine the method to apply in calculating initial assessments. *Gaynor-Stafford Industries, Inc.* v. *Water Pollution Control Authority*, 192 Conn. 638, 645, 474 A.2d 752 (''§ 7-249 contains broad provisions, permitting the [water pollution control authority] to 'give consideration to the area, frontage, grand list valuation and to present or permitted use or classification of benefited properties and to any other relevant factors' ''), cert. denied, 469 U.S. 932, 105 S. Ct. 328, 83 L. Ed. 2d 265 (1984). Unless we conclude that a certain method is unreasonable, we defer to the water pollution control authority's discretion in setting the method. See id., 646 (''where the formula adopted bears a reasonable relationship to the benefits conferred the method of assessment would be upheld''). We have not, however, determined whether this discretion extends to the method employed in calculating *supplemental* assessments, as opposed to initial assessments.

The plaintiff argues that the clause, ''assessing benefits,'' ''pertains to the method by which initial assessments are formulated,'' not to supplemental assessments, because of the distance between the two sentences. This argument, however, ignores the statute's context. First, the term ''assessing'' is not limited in any way. Second, we note that, if textual proximity were relevant or determinative, the portion of the statute regarding initial assessments is located even farther from this section on methodology—it is the first sentence of the statute. Third, as we have explained, immediately prior to this portion on methodology, the phrase, ''[s]uch assessments,'' refers to both ''initial and subsequent assessments'' in regard to the costs that may be considered in calculating assessments. The statute then sets forth how ''[s]uch assessments'' may be calculated. In con-

777 Residential, LLC *v.* Metropolitan District Commission

text, the phrase, "[i]n assessing benefits," is reasonably susceptible to only one interpretation—it means "in assessing benefits for such assessments, including both initial and subsequent assessments." As a result, we conclude that § 7-249 must grant water pollution control authorities discretion in deciding the method to apply in assessing supplemental benefits. Thus, in the present case, although the total amount of the initial and supplemental assessments could not exceed the value of the benefit that access to the sewerage system would have conferred on the altered property if it had existed in 1849, the defendant retained discretion to determine the method to apply in calculating the supplemental assessment. The plaintiff, which bears the burden in this case, however, has not maintained any claims before this court or the trial court[18] that either the assessment exceeded the benefit to the property or that the method was unreasonable.

The plaintiff counters that, even if the portion of § 7-249 regarding methodology is not explicitly limited to calculating the initial assessment, other portions of § 7-249 require use of the same method for calculating the initial and supplemental assessments. The plaintiff contends that § 7-249 requires the defendant to adopt rules regarding levying assessments and to comply with those rules, and interprets this portion of the statute to prevent the defendant from changing the rules applicable to a certain property once it levies the initial assessment, thereby requiring the defendant to apply the same rules to the supplemental assessment as existed at the time of

---

[18] Although the plaintiff did claim in its appeal to the trial court that the supplemental assessment was excessive because it was based on 286 units, not 285, the plaintiff never claimed that the total of the initial and supplemental assessments exceeded the value of the benefit to the altered property as if it existed in 1849. The defendant never had notice that it had to rebut any evidence that the assessment amount exceeded the benefit to the property. Moreover, the parties and the trial court concede that the plaintiff never attempted to meet its burden in this regard.

777 Residential, LLC *v.* Metropolitan District Commission

the initial assessment. Specifically, the plaintiff argues that, because the method used has to conform with the rules adopted by the defendant, and because the supplemental assessment has to be based on the benefit to the property as of the time of the initial assessment, the method used for calculating the supplemental assessment must be a method authorized at the time of the initial assessment and not a method authorized by rules adopted after 1849. The plaintiff contends that the only methods authorized in 1849 were street frontage and lateral charge, and, thus, the defendant was limited to those methods in calculating the supplemental assessment because, as the trial court determined, it would be impossible to assess the altered property as if it existed in 1849 by using a method that did not exist at that time.

The plaintiff is correct that the first sentence in § 7-249 requires the defendant to set rules regarding benefit assessments and to comply with those rules. See General Statutes § 7-249 ("the water pollution control authority may levy benefit assessments upon the lands and buildings in the municipality which, in its judgment, are especially benefited thereby . . . according to such rule as the water pollution control authority adopts"). Even if this sentence prevents the defendant from changing the rules applicable to a particular property once it levies the initial assessment, and thus limits the defendant's choice in method to the same extent limited in 1849, nothing in the statute prevents the defendant from using a different method for calculating the initial and supplemental assessments, as long as that method was authorized under the rules applicable at the time of the initial assessment. The plaintiff has failed to offer any evidence that the defendant used a method not authorized under the rules governing benefit assessments in 1849. Evidence at trial showed that, at the time of the initial assessment, which predated § 7-249, a predeces-

sor to the defendant was in charge of levying sewerage benefit assessments, and no evidence was offered as to the extent of its authority. Although there is evidence in the record that the initial assessment was calculated on the basis of street frontage, there is no evidence that the authority of the defendant's predecessor was limited to considering only street frontage and no other factors, such as present use. Rather, the testimony at trial resulted in uncertainty as to which methods were permitted to be used in calculating sewerage benefit assessments in 1849. It was the plaintiff's burden to establish that a particular method was improper. See *Gaynor-Stafford Industries, Inc.* v. *Water Pollution Control Authority*, supra, 192 Conn. 646.

Moreover, to interpret § 7-249 as the plaintiff argues would be unworkable and absurd. See, e.g., *Tappin* v. *Homecomings Financial Network, Inc.*, 265 Conn. 741, 758–59, 830 A.2d 711 (2003) ("[w]e will not construe a statute so as to effect an absurd result"). Because water pollution control authorities have discretion to consider a variety of factors, only some of which apply to certain kinds of property, the method used for calculating an initial assessment may not apply for calculating a supplemental assessment if the use of the property has changed. For example, if a property used for multiunit residential dwellings is initially assessed on the basis of the number of residential units, and the property is later converted into a single, large commercial building (the opposite of what happened at 777 Main Street), the initial methodology might not apply for purposes of calculating the supplemental assessment. Under the plaintiff's interpretation of the statute, in these kinds of circumstances, § 7-249 prohibits the levying of a supplemental assessment.

The plaintiff argues that this court has recognized that, under § 7-249, the defendant may not recoup all of its costs for construction of the sewerage system through benefit assessments, so that interpreting the

777 Residential, LLC *v.* Metropolitan District Commission

statute as it contends would not be unworkable even if such an interpretation would prevent the levying of a supplemental assessment in this case or in other cases. Although this court has explained that § 7-249 limits the defendant's ability to recoup its costs for sewerage system construction in that an assessment cannot exceed the benefit to the property; *Shoreline Care Ltd. Partnership* v. *North Branford*, supra, 231 Conn. 352; we never have interpreted this portion of § 7-249 as limiting the method that may be used to calculate supplemental assessments. If levying a supplemental assessment would lead to the total amount of assessments to exceed the benefit to the property, the supplemental assessment is prohibited. Nevertheless, that does not require this court to interpret other portions of § 7-249 to prevent the defendant from levying a supplemental assessment, even if the assessment is not excessive. The statute imposes a limitation, not on the method used, but on the result of its calculation.

In sum, we conclude that the trial court incorrectly determined that § 7-249 required the defendant to use the same method to calculate the supplemental assessment as was used to calculate the initial assessment.[19]

---

[19] The plaintiff contends that, even if the supplemental assessment was calculated using a proper method, because the defendant has not challenged the trial court's finding that improvements to the Hartford sewerage system since 1849 have not benefited or affected the property, the supplemental assessment was unlawful ab initio. Specifically, the trial court found: "[T]here is no evidence of any improvements to the [sewerage line] serving 777 Main Street. [The defendant] did present evidence that it made improvements to the Hartford [sewerage] system generally over the years, and the court credit[ed] that evidence, but there is no evidence as to how those improvements may have affected [the property]."

The plaintiff's argument does not relate to the plaintiff's claim regarding methodology but is relevant to whether the supplemental assessment exceeds the benefit to the property—an issue not raised by the plaintiff in its appeal to the Superior Court, not decided by the trial court, and not supported by any evidence presented by the plaintiff, which "did not present any evidence that the sum of the initial and supplemental assessments exceeded the special benefit accruing to the property." Thus, we do not address this issue.

Accordingly, we reverse the trial court's judgment as to this issue and direct the trial court on remand to decide any remaining claims.

The judgment is reversed only as to the trial court's determination of the defendant's method of calculating the supplemental assessment and the case is remanded for further proceedings consistent with this opinion; the judgment is affirmed in all other respects.

In this opinion the other justices concurred.

---

Nevertheless, we note that the trial court relied on this lack of evidence not to show that the supplemental assessment was excessive, but to show that its interpretation of § 7-249 did not place an undue hardship on the defendant because the defendant had not incurred any new construction costs since 1849, which it assumed had "long since been paid." Even if that is true, this court consistently has stated that it is not the cost to the defendant but the benefit to the property that matters for determining whether a sewerage benefit assessment may be levied. See, e.g., *Shoreline Care Ltd. Partnership* v. *North Branford*, supra, 231 Conn. 352–54.

Additionally, the plaintiff argues that this finding invalidates the supplemental assessment because it shows that the defendant did not incur any additional costs for constructing the Main Street sewerage line connecting the property to the sewerage system after 1849. According to the plaintiff, a lack of costs incurred by the defendant invalidates the supplemental assessment because § 7-249 requires revenue from sewerage benefit assessments to be used only to recoup the cost of construction of the sewer; therefore, according to the plaintiff, if there are no costs to recoup, there is no authority to levy an assessment. See General Statutes § 7-249 ("[r]evenue from the assessment of benefits shall be used solely for the acquisition or construction of the sewerage system providing such benefits or for the payment of principal of and interest on bonds or notes issued to finance such acquisition or construction"). Again, this is an issue that does not involve methodology but is an unraised, unpreserved issue that the trial court did not address. The defendant had no notice of this issue, and, if it had, it may have presented different evidence at trial regarding subsequent construction to the Hartford sewerage system and whether any construction affected the sewerage line to the property, assuming that the plaintiff's argument is correct. Thus, we also do not address this issue. Nevertheless, we note that, although there was no evidence of construction to the Main Street sewerage line since 1849, there was evidence of construction to the Hartford sewerage system since 1849, and § 7-249 permits assessment revenue to be used to recoup costs for construction of the *sewerage system* benefiting the property.